373 So.2d 102 (1978)
Fred SAUCIER
v.
HAYES DAIRY PRODUCTS, INC. and the Hartford Group Insurance Company.
No. 61562.
Supreme Court of Louisiana.
December 15, 1978.
On Rehearing June 25, 1979.
*103 Michael A. Patterson, Roy, Kiesel, Patterson & Abadie, Baton Rouge, amicus curiae, for defendant-appellant.
George W. Reese, in pro. per.
Emile L. Turner, Jr., New Orleans, for plaintiff-applicant.
Charles B. W. Palmer, Amite, amicus curiae.
SANDERS, Chief Justice.
The issue presented is whether an attorney discharged by his client without cause prior to the completion of his services is entitled to the percentage fee stipulated in his contingent fee contract, drawn and recorded in conformity with LSA-R.S. 37:218, when the client subsequently recovers from the adverse party. The Court of Appeal allowed recovery. We affirm.
Relator, Fred Saucier, was injured in an automobile accident on February 9, 1971. He employed Attorney George Reese to represent him in a claim for damages. Saucier *104 executed a contingent fee contract, providing in pertinent part:
"* * *
"In consideration of services rendered or to be rendered I hereby assign to my said attorney an undivided thirty-three and one-third (331/3%) per cent interest in and to my said claim if it is to be resolved that the claim is one for damages.
"It is understood and agreed that neither I nor my said attorney may settle, compromise, or dismiss or in any way discontinue my claim without the written consent of the other. * * *"
After investigating the claim and conducting settlement negotiations, Reese filed suit in behalf of his client on January 25, 1972. There was a delay in bringing the case to trial, allegedly due to the client's deteriorating medical condition. On January 15, 1975, Saucier dismissed Reese and retained other counsel. Two weeks later, Reese filed his employment contract with the Clerk of Court and served certified copies on all parties to the suit in accordance with LSA-R.S. 37:218. He also intervened, claiming 331/3% of any recovery.
Prior to trial of the main demand, the parties agreed upon a settlement of $75,000. Reese acquiesced in the settlement, without prejudice to his intervention. Following trial of the intervention, the district court limited Reese's recovery to quantum meruit, awarding him $3,000 for legal services, plus court costs and medical expenses paid for his client. The district court did not assign reasons for its judgment.
The Court of Appeal found that Saucier discharged Reese without cause. Basing its award upon the contingent fee contract, it increased the award to $25,000, or 331/3% of the recovery. La.App., 353 So.2d 732 (1972). We granted certiorari to review the judgment. La., 355 So.2d 265 (1978).
From a review of the record, we conclude that the evidence supports the Court of Appeal's factual findings. Hence, we accept its factual determination that the client discharged the attorney without cause.
When the contingent fee contract was executed and recorded, LSA-R.S. 37:218 provided:
"By written contracts signed by the client, attorneys at law may acquire as their fee an interest in the subject matter of the suit, proposed suit, or claim in the prosecution or defense of which they are employed, whether the suit or claim be for money or for property. In such a contract for employment, it may be stipulated that neither the attorney nor the client may, without the written consent of the other, settle, compromise, release, discontinue or otherwise dispose of the suit or claim. Either party to the contract may, at any time, file it with the clerk of the district court in which the suit is pending or is to be brought and have an original or certified copy made and served by registered or certified mail on the opposing party. After such service, any settlement, compromise, discontinuance, or other disposition made of the suit or claim by either the attorney or the client without the written consent of the other is null and void and the suit or claim shall be proceeded with as if no such settlement or discontinuance had been made."[1]
The present contract was drawn, recorded, and served in compliance with the statute. A determination of the basis for and amount of recovery, therefore, requires consideration of the nature of the contract and effect of the statute.
The relator contends that, despite the employment contract and compliance with the statute, a client may without cause discharge his attorney at any time and relegate the attorney to the recovery only on quantum meruit for services rendered to the time of discharge. The attorney asserts that he is entitled to recover the full amount of the contract when he has complied *105 with the statute and the client has discharged him without cause.
A contingent fee contract is a contract for legal services in which the attorney's fee depends upon success in the enforcement of the client's claim. The attorney bears the risk of loss insofar as his legal services are concerned. Due v. Due, La., 342 So.2d 161 (1977); Pocius v. Halvorsen, 30 Ill.2d 73, 195 N.E.2d 137, 13 A.L.R.3d 662 (1963). Such contracts promote the distribution of needed legal services by reducing the risk of financial loss to clients and making legal services available to those without means.
Louisiana courts have long approved the contingent fee contract. See Hope v. Madison, 194 La. 337, 193 So. 666 (1940); Andriac v. Richardson, 125 La. 883, 51 So. 1024 (1910); Clay v. Ballard, 9 Rob. 308, 41 Am. Dec. 328 (1844); Flower v. O'Conner, 7 La. 198 (1834). Since 1906, our Legislature has protected it by statute. See Act 124 of 1906. In addition, the Louisiana Code of Professional Responsibility recognizes such a contract.
DR 5-103 provides in pertinent part:
"(A) A lawyer shall not acquire a proprietary interest in the cause of action or subject matter of litigation he is conducting for a client, except that he may:
(1) Acquire a lien granted by law to secure his fee or expenses.
(2) Contract with a client for a reasonable contingent fee in a civil case." 21A LSA-R.S., p. 206.
Attorney's fees, of course, are subject to review and control by the courts. Husk v. Blancand, 155 La. 816, 99 So. 610 (1924); Norrell v. Chasan, 125 N.J.Eq. 230, 4 A.2d 88, 120 A.L.R. 1238 (1939); 7 Am.Jur.2d, Attorneys at Law, § 215, p. 172. One of the factors courts consider, however, is whether the fee is fixed or contingent. DR 2-106, Louisiana Code of Professional Responsibility, 21A LSA-R.S., pp. 188-189.
LSA-R.S. 37:218 is designed as a legislative aid in the judicial regulation of the practice of law. See Ex parte Steckler, 179 La. 410, 154 So. 41 (1934); Meunier v. Bernich, La.App., 170 So. 567 (1936). It recognizes the contingent fee contract and protects the attorney in the collection of his fee. When an attorney follows the statute, he has an enforceable right to share in the funds eventually recovered.
The statute, in our opinion, does not prevent the dismissal of the attorney, with or without cause. The client's power to dismiss the attorney remains intact. LSA-C.C. Art. 3028; Due v. Due, supra; Louque v. Dejan, 129 La. 519, 56 So. 427 (1911). When the dismissal is without cause, however, the statute safeguards the contractual contingent fee. United Gas Public Service Co. v. Christian, 186 La. 689, 173 So. 174 (1937); D'Avricourt v. Seeger, 169 La. 620, 125 So. 735 (1929); Guilbeau v. Fireman's Fund Insurance Company, La.App., 293 So.2d 216 (1974); Carlson v. Nopal Lines, 460 F.2d 1209 (5th Cir. 1972); Patterson, Contingent Fee Contracts: The Dilemma of the Discharged Attorney, 24 La. Bar J. 107, 116.
In Carlson v. Nopal Lines, supra, the United States Fifth Circuit Court of Appeal, considering a Louisiana contingent fee contract complying with LSA-R.S. 37:218, stated:
"A client may discharge his attorney, even a contingent fee attorney, and the attorney may not then insist that the attorney-client relationship continues after discharge. But the power to discharge, and the fact of discharge, are not determinative of the discharged attorney's rights under a Louisiana statutory contingent fee contract. The lawyer's rights under such a contract turn at least in part on whether the lawyer's performance gives the client good cause for dismissal or whether the dismissal frustrates what had been satisfactory performance of the attorney's obligations. See Acadian Production Corp. of Louisiana v. Land, 136 F.2d 1, 3 (5th Cir. 1943); United Gas Public Service Co. v. Christian, 186 La. 689, 173 So. 174 (1937)."
Courts elsewhere have reached the same result without a protective statute. See, e. *106 g., Walters v. Hastings, 84 N.M. 101, 500 P.2d 186 (1972); Carter v. Dunham, 104 Kan. 59, 177 P. 533 (1919); Annot., 136 A.L.R. 231, 233, 245; S. Speiser, Attorneys' Fees, § 4:34, p. 181 (1973).
The decisions have advanced two main theories for awarding the contractual fee: damages for breach of contract and constructive performance. Under the first theory, the court awards damages measured, at least presumptively, by the fee agreed upon. Roberts v. Montgomery, 115 Ohio 502, 154 N.E. 740 (1926); S. Speiser, Attorneys' Fees, § 4:35, p. 183 (1973). The second theory is that the client has prevented full performance without cause. Hence, the contract is considered performed. D'Avricourt v. Seeger, supra; Annot., 136 A.L.R. 231, 233; S. Speiser, Attorneys' Fees, § 4:34, pp. 181-182 (1973).
In D'Avricourt v. Seeger, supra, this Court held:
"It is expressly provided in article 2040 of the Civil Code that: `The condition is considered as fulfilled, when the fulfillment of it has been prevented by the party bound to perform it.'
"The contract of sale of the two-thirds interest of Mrs. Bickmann and Mrs. Manzella to the Gentilly Development Company was clearly an act, on their part, of entering into another contract destructive of their first contract with plaintiff. A party cannot get out of his contract in that manner. No one can be permitted to take advantage of his own wrong. Lloyd v. Dickson et al., 116 La. 90, 92, 40 So. 542."
We adhere to the theory of constructive performance announced in the above decision. Louisiana Civil Code Article 2040 provides a solid basis for a determination of the fee entitlement. See George W. Garig Transfer v. Harris, 226 La. 117, 75 So.2d 28 (1954).
Although the creation of the attorney-client relationship is essentially contractual, the relationship involves the vindication of the client's legal rights and, transcending the specific case, has a strong impact upon society. Hence, when an attorney is dismissed prior to the completion of his services, this Court requires strict adherence to the statute for the enforcement of the contractual fee. See Tennant v. Russell, 214 La. 1046, 39 So.2d 726 (1949); Succession of Rice, 147 La. 834, 86 So. 282 (1920); Succession of Carbajal, 139 La. 481, 71 So. 774 (1916); Dickerson v. Scholvin, La.App., 261 So.2d 110 (1972).
The relator contends that compliance with LSA-R.S. 37:218 makes "little or no difference." We disagree. In our opinion, the statute gives added protection to the attorney, including entitlement to his contractual fee should his client recover.
Here, as the Court of Appeal noted, the attorney followed the statute. He has done all that the law requires to earn and protect his fee. Thus, he is entitled to recover.
In conclusion, we hold that an attorney discharged without cause prior to the completion of his services is entitled to the percentage fee stipulated in his contingent fee contract, drawn and recorded in conformity with LSA-R.S. 37:218, when the client subsequently recovers from the adverse party.
For the reasons assigned, the judgment of the Court of Appeal is affirmed.
TATE, J., dissents and assigns reasons.
CALOGERO, J., dissents for reasons assigned by Dennis, J.
DENNIS, J., dissents and assigns reasons.
TATE, Justice, dissenting.
I respectfully dissent.
As a consequence of our decree, two-thirds of the proceeds of the client's claim is diverted to pay attorneys. This unconscionable result represents, I regretfully suggest, an abdication of our duty to regulate excessive attorney's fees in contingent-fee contracts in the interest of the public in the administration of justice. Our holding that an attorney is entitled to his contractual percentage of a claim he was retained to collect, whether or not he actually performs the services for which he is so compensated, *107 is not only not required by the statute or legislative intention relied upon to justify allowance of this unearned fee; it is also allowed by us in contravention of the letter and the spirit of our rules regulating the practice of law (see my brother DENNIS' dissent).

(1)
We have today approved an award of attorney's fees of 33 and 1/3 percent of the recovery of $75,000 to the initially retained attorney, intervenor. Although approved by the intervenor, the settlement was reached through the efforts of a subsequently retained other attorney. The latter is himself entitled to receive a 331/3 percent fee as per his contract, which was fully earned. Aside from aggressive efforts to bring the claim to trial, this latter attorney's performance of his contract greatly enhanced the settlement value of the claim by discovering insurance coverage overlooked by the intervenor during his years of previous representation.
The relationship between attorney and client is not a mere commercial contract. The fiduciary relationship existing between lawyer and client is of a personal nature imposing on the lawyer exceptional requirements of confidentiality and fidelity to his client's interest. See, e. g., Canons 4 and 7, Louisiana Code of Professional Responsibility (1971).
An attorney is mandatorily required to withdraw from representation if his client discharges him, Ibid, Disciplinary Rule 2-110(B)(4); in the event of withdrawal, the attorney has no right to retain fees not earned, Ibid, Disciplinary Rule 2-110(A)(3). Thus, unlike an ordinary commercial contractual relationship, the fiduciary and personal relationship of attorney and client to discharge his attorney at will, without responsibility for unearned fee. (The lawyer, of course, is nevertheless entitled to be compensated for the value of his services actually performed, since otherwise the client would receive an unjustified enrichment. Oil Purchasers, Inc. v. W. J. Kuehling, 334 So.2d 420 (La.1976).)

(2)
The majority holds that an attorney acquires a vested interest in the subject matter of his client's claim by virtue of La.R.S. 37:218. This statute does permit the attorney to acquire an interest (not vested) in the proceeds from a suit, and it also prohibits settlement of the suit without the written consent of the attorney.
Here, however, the attorney consented to the settlement of the suit. He was discharged before settlement, but he is entitled to recover for the value of his services rendered prior to such discharge. In my opinion, the value to which he is entitled is not the contractual one-thirdwhich is contemplated to be his due only if he performs full services leading to the settlement.
Contingent fee contracts, like all contracts for the services of attorneys, involve mandate or agency. Louque v. Dejan, 129 La. 519, 56 So. 427 (1911); Gurley v. City of New Orleans, 41 La.Ann. 75, 5 So. 659 (1889); Schiro v. Macaluso, 13 La.App. 88, 126 So. 244 (La.App. Orl. Cir. 1930). As such, they are subject to the rules of mandate, including revocation at the will of the principal, La.Civ.C. Art. 3028; Succession of Robinson, 188 La. 742, 178 So. 337 (1938); Foster, Hall, Barret & Smith v. Holey, 174 La. 1019, 142 So. 251 (1932), and expiration on the death of the agent, La.Civ.C. art. 3027, Succession of Zatarain, 138 So.2d 163 (La.App. 1st Cir. 1962), certiorari denied (La.1962).
Upon termination, the attorney is entitled to recover only the value of his services, not the original contingent fee under the contract, which contemplated that he perform the full and entire services leading to the settlement rather than only part of them. Oil Purchasers v. W. J. Kuehling, 334 So.2d 420 (La.1976).
I agree with the majority that contingent fee contracts are lawful and provide a useful purpose in making available the services of experienced and able lawyers to poor people who could not otherwise afford to hire them. I fully agree that the value of an attorney's services should be recognized and made payable out of the proceeds of *108 any settlement if the attorney is discharged. However, I do not agree (for the reasons to be more fully stated by my brother Dennis, that an attorney can acquire a vested interest in the subject matter of a client's suit, so that he is therefore entitled to be paid his original contracted percentage whether or not he actually performs the services.
The majority today has reached an unconscionable result in providing that two-thirds of the client's claim must be used to pay the two attorneys, simply because one of them had an initial contract to handle the case in return for 331/3 percent of the proceeds obtained by settlement or litigationespecially when that latter attorney did not in fact complete the services for which he contracted due to his client's dissatisfaction and termination of his employment.[1]
Within our judicial duty in the regulation of excessive fees, I am unable to justify our award of the full contingent fee where in fact full services were not performed to earn it.
Accordingly, I respectfully dissent.
DENNIS, Justice, with whom TATE and CALOGERO, JJ., join, dissenting.
I respectfully dissent from the majority opinion which, in effect, divides Fred Saucier's $75,000 recovery for his personal injuries as follows:
Saucier - $25,000
Saucier's first lawyer - $25,000
Saucier's second lawyer - $25,000
Unfortunately, Fred Saucier is not the only tort victim who may be dealt this curious brand of justice. At a time when most of the nation recognizes the need for closer scrutiny of attorney-client relations and the need for stricter professional ethics, the majority has chosen to disregard many of this Court's rules, which were adopted for disciplinary purposes upon recommendation of the Louisiana State Bar Association. Ignoring also the constitutional separation of powers which places the regulation of attorney's fee contracts within the prerogative of the judicial branch of government, my colleagues whose votes preponderate have seized upon an ambiguous act of the legislature as a pretext for promoting an inexplicably anachronistic laissez faire doctrine regarding attorney-client contracts.
In awarding the discharged attorney one-third of his client's settlement recovery both the court of appeal and a majority of this Court relied primarily upon La.R.S. 37:218. When the contingent fee contract was confected the statute provided:[1]
"By written contracts signed by the client, attorneys at law may acquire as their fee an interest in the subject matter of the suit, proposed suit, or claim in the prosecution or defense of which they are employed, whether the suit or claim be for money or for property. In such a contract for employment, it may be stipulated that neither the attorney nor the client may, without the written consent of the other, settle, compromise, release, discontinue or otherwise dispose of the suit or claim. Either party to the contract may, at any time, file it with the clerk of the district court in which the suit is pending or is to be brought and have an original or certified copy made and served by registered or certified mail on the opposing party. After such service, any settlement, compromise, discontinuance, or other disposition made of the suit or claim by either the attorney or the client without the written consent of the other is null and void and the suit or claim shall be proceeded with as if no such settlement or discontinuance had been made."
*109 If this were the only law on the subject, it could be interpreted, as the majority does, to authorize an attorney to acquire by assignment the actual ownership of a fixed percentage of his client's claim as consideration for the attorney's mere promise to perform legal services. However, the statute may not be so construed when considered in light of other legal principles which govern the conduct of an attorney and his relationship with his client.
Our state constitution divides governmental power into separate legislative, executive and judicial branches and provides that no one branch shall exercise powers belonging to the others. La.Const.1974, art. II, §§ 1, 2. This trichotomous branching of authority furnishes the basis for the existence of an inherent judicial power which the legislative and the executive branches cannot abridge. See, Hargrave, The Judiciary Article of the Louisiana Constitution of 1974, 37 La.L.Rev. 765 (1977). The constitution further provides that this Court has exclusive original jurisdiction of disciplinary proceedings against a member of the bar. La.Const.1974, art. V, § 5(B). These grants of power are continuations of authority vested in the courts by previous constitutions. La.Const. art. 2 (1921); La.Const. arts. 16-17 (1913); La.Const. arts. 16-17 (1898); La.Const. arts. 14-15 (1879) (separation of powers); La.Const. art. 7, § 10(2) (1921); La.Const. art. 85 (1913); La.Const. art. 85 (1898) (original jurisdiction).
Under its inherent judicial power and its original jurisdiction this Court has the supreme authority to regulate the practice of law by court rules or by adjudication as cases may arise. Louisiana State Bar Ass'n. v. Edwins, 329 So.2d 437 (La.1976); Ex Parte Steckler, 179 La. 410, 154 So. 41 (1934); Meunier v. Bernich, 170 So. 567 (Orl.App.1936).[2] Pursuant to these powers, by an order entered on March 12, 1941, this Court adopted and promulgated the Articles of Incorporation of the Louisiana State Bar Association "as rules of this court." See, Supreme Court of Louisiana Order Book March 12, 1941-Feb. 26, 1948 at p. 1A; Rules of Supreme Court of Louisiana, Rule 19 (1973); La.R.S. 37:211; In re Mundy, 202 La. 41, 11 So.2d 398, 400 (1942); Hood, Renewed Emphasis on Professional Responsibility, 35 La.L.Rev. 719, 722 (1975). The articles were amended by an order of this Court dated June 12, 1970 so as to incorporate in lieu of the former Canons of Professional Ethics under Article XIV, the Code of Professional Responsibility of the American Bar Association with the amendments adopted by the House of Delegates, the Board of Governors and the membership of the Louisiana State Bar Association, effective July 1, 1970. Supreme Court of Louisiana Order Book Aug. 19, 1967-Jan. 1971 at p. 162. The articles, as amended, have been published and distributed to the members of the bar of the state. Articles of Incorporation, Louisiana State Bar Ass'n, La.R.S. 37, ch. 4 app. See also, Louisiana State Bar Association Attorney's Desk Book (1970). The legislature has recognized that the Louisiana State Bar Association is created and regulated under the rule-making power of this Court. La.R.S. 37:211; Act 54 of 1940.
*110 These standards governing the conduct of attorneys unquestionably have the force and effect of substantive law. Louisiana State Bar Ass'n. v. Connolly, 201 La. 342, 9 So.2d 582, 590 (1942); Ex Parte Steckler, supra. While this Court will approve legislative acts passed in aid of its inherent power, statutes which tend to impede or frustrate its authority will be struck down. Louisiana State Bar Ass'n. v. Connolly, supra, at 586; Meunier v. Bernich, supra.
Accordingly, to determine whether La. R.S. 37:218 may be construed so as to permit an attorney discharged without cause to collect as his fee, regardless of the value of services performed, an assigned fixed percentage of his client's claim, this Court should turn first to its own rules promulgated for the regulation of the conduct of members of the bar. The rules of this Court known as the Code of Professional Responsibility consist of three parts: Canons, Ethical Considerations, and Disciplinary Rules. Louisiana Code of Professional Responsibility, Articles of Incorporation, Louisiana State Bar Ass'n., art. XVI, La. R.S. 37, ch. 4, app. The Canons are statements of general concepts from which the Ethical Considerations and Disciplinary Rules are derived. The Ethical Considerations are aspirational and represent the objectives toward which every member of the profession should strive. The Disciplinary Rules are mandatory rules stating the minimum level of conduct below which no lawyer can fall without being subject to disciplinary action. American Bar Association Code of Professional Responsibility, Preliminary Statement (1969); Hood, Renewed Emphasis on Professional Responsibility, 35 La.L.Rev. 719, 737 (1975).
Several Disciplinary Rules in the Code of Professional Responsibility are pertinent to the issues of statutory and contractual interpretation presented in the instant case. Respecting the permissible terms of a contingent fee contract, the Code provides that a lawyer shall not acquire a proprietary interest in the cause of action or subject matter of litigation he is conducting for a client, except that he may acquire a lien granted by a law to secure is fee or expenses and contract with a client for a reasonable contingent fee in a civil case. DR 5-103(A)(1), and (2).[3] A lawyer representing a client in any matter is required to withdraw from employment if he is discharged by his client. DR 2-110(B)(4).[4] A lawyer who withdraws from employment shall refund promptly any part of a fee paid in advance that has not been earned. DR 2-110(A)(3).[5] A lawyer may not contract for, charge or collect an illegal or clearly excessive fee. DR 2-106(A).[6] A fee is clearly excessive when, after a review of the facts, a lawyer of ordinary prudence would be left with a definite and firm conviction that the fee is in excess of a reasonable fee. DR 2-106(B).[7] Factors set forth in the Code to be considered as guides in *111 determining the reasonableness of a fee include the following:
"(1) The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly.
(2) The likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer.
(3) The fee customarily charged in the locality for similar legal services.
(4) The amount involved and the results obtained.
(5) The time limitations imposed by the client or by the circumstances.
(6) The nature and length of the professional relationship with the client.
(7) The experience, reputation, and ability of the lawyer or lawyers performing the services.
(8) Whether the fee is fixed or contingent." DR 2-106(B)
Sound reasons of policy and justice support the foregoing Disciplinary Rules. The relation of attorney and client is one of special confidence and trust and the dignity and integrity of the legal profession demand that the interests of the client be fully protected. Moreover, without public confidence in the members of the legal profession which is dependent upon absolute fairness in the dealings between attorney and client, courts cannot function in the proper administration of justice. Inherent in the relationship between attorney and client is the fact that the client must rely almost entirely upon the good faith of the attorney who alone can make an informed estimate of the value of the client's legal right and of the expense and effort necessary to enforce it. These considerations have given rise to the generally accepted rule that a client may discharge his attorney at any time with or without cause. In order for the right to discharge to be of any value the client must not be forced to risk paying the full contract price for services not rendered upon a determination by a court that the discharge was without legal cause. Otherwise, the client would frequently be forced to choose between continuing the employment of an attorney in whom he has lost faith, or risking the payment of double contingent fees equal to the greater portion of any amount eventually recovered. See, Fracasse v. Brent, 6 Cal.3d 784, 494 P.2d 9 (1972). See also, Ambrose v. Detroit Edison, 65 Mich.App. 484, 237 N.W.2d 520 (1976); People v. Radinsky, 512 P.2d 627 (Colo.1973); Cole v. Myers, 128 Conn. 223, 21 A.2d 396 (1941); First Nat'l. Bank v. Bassett, 83 Okl. 592, 83 P.2d 837 (1938); Ramey v. Graves, 112 Wash. 88, 191 P. 801 (1920); Martin v. Camp, 219 N.Y. 170, 114 N.E. 46 (1916).
To allow an attorney to acquire, without providing commensurate legal services, an assigned fixed percentage of his client's claim would be to condone violations of the rules of this Court setting forth the ethical duties owed by a lawyer to his client. Enforcement of such an agreement would thus tend to embarrass, frustrate and impede this Court in its function of regulating the practice of law. Accordingly, in order to preserve the integrity of its inherent judicial power and original jurisdiction, and to uphold its rules adopted pursuant thereto, it is this Court's duty to prohibit the enforcement of a contract which contravenes the Code of Professional Responsibility which it has adopted for the regulation of the practice of law in Louisiana.[8]
*112 Therefore, if La.R.S. 37:218 were to authorize attorney-client contracts conflicting with the rules of this Court, it would be our clear duty to strike down the statute. Louisiana State Bar Ass'n. v. Connolly, 201 La. 342, 9 So.2d 582 (1942); Ex Parte Steckler, 179 La. 410, 154 So. 41 (1934); Meunier v. Bernich, 170 So. 567 (Orl.App.1936). Likewise, if the contract were in violation of the Code of Professional Responsibility it should not be enforced judicially. However, if the statute or contract is subject to more than one reasonable interpretation, this Court should adopt the construction which will allow it to be upheld. Accordingly, in my opinion, the majority fell into two-fold error, i. e., in its failure to recognize that this Court's rules are the paramount authority for regulating attorney-client relations; and in adopting and enforcing constructions of the statute and the contract in conflict with the Code of Professional Responsibility.
Under our rules an attorney clearly may contract with a client to provide legal services for a fee contingent and calculated upon the amount recovered or preserved, so long as the contract does not restrict the client's right with or without cause to discharge the attorney, or grant as a fee to the attorney without requirements of commensurate services an immutable proprietary percentage of the client's claim, or result in an attorney collecting a "clearly excessive" fee which has not been "earned" as defined by the rules.
La.R.S. 37:218 reasonably may be construed as being in harmony with this Court's rules. The statute merely permits an attorney to acquire and protect an undefined "interest" in his client's claim. Since under our rules an attorney cannot acquire an absolute ownership interest in a client's claim before performing commensurate legal services, his contractual "interest" authorized and protected by La.R.S. 37:218 can only consist of a privilege enabling the attorney to collect, out of the proceeds from the enforcement of the claim, a fee representing the full value of his services performed.[9] After recordation and service of the employment contract under the statute, as construed, the attorney would have a cause of action against the client and the opposing party for any fee actually earned by him if the settlement or other disposition of the claim was made without the attorney's consent.[10] During an attorney's employment he may by contract require that the client shall not settle or dispose of the claim or suit without the attorney's consent. The statute, however, does not permit any limitation upon the client's right to discharge the attorney at any time with or without cause, nor authorize an attorney to control the prosecution or settlement of a claim after he has been discharged. Accordingly, there being no conflict between the rules of this Court and La.R.S. 37:218, as reasonably construed in favor of its preservation, both should be applied to the contract in the instant case.
The attorney-client contract between Saucier and Reese appears upon careful examination to be ambiguous in several respects. At first blush it seems to be in conflict with the Disciplinary Rules by calling for the absolute assignment of an unearned one-third of the client's claim to the attorney. Further study calls to our notice, however, the absence of any provision barring the client's discretionary discharge of the attorney. Moreover, a closer look at the fee stipulation reveals that the assignment *113 of one-third of the client's claim is not absolute but effective only "if it is to be resolved that the claim is one for damages." Therefore, one reasonable contractual interpretation is that the parties intended that the 331/3% fee would be earned and payable only if the attorney had fully performed his obligation to resolve the claim to damages. Viewed in this light the contract does not contemplate that the attorney necessarily shall be paid one-third of the claim if he is discharged prior to the substantial completion of his duties. Recordation and service of the contract as provided by La.R.S. 37:218 preserved the attorney's right, upon settlement or disposition of the claim without his consent, to collect any fee earned by him out of the proceeds of the claim or from the client and the opposing party. However, because the discharged attorney may only collect a fully earned, not-excessive fee, this protection of the attorney's interest does not constitute an unwarranted impingement upon the client's right to discharge the attorney and prosecute his claim with the assistance of new counsel.
In the instant case the contract should be interpreted to grant the attorney as his fee one-third of the client's claim only upon substantial completion of the performance of his legal representation obligation. The agreement should not be construed to prevent or discourage the client from discharging the attorney with or without cause. Since the attorney-client contract in the instant case is enforceable as interpreted, it follows that the attorney is entitled to enforce the privilege and other rights available to him under La.R.S. 37:218 and to recover under the contract whatever fee he has "earned" which is not "clearly excessive" as defined by the Disciplinary Rules.
The majority opinion in the instant case disembowels the Disciplinary Rules of this court by allowing the attorney to enforce a proprietary or ownership interest in his client's cause of action and to retain a clearly excessive fee. Although the majority professes to believe that attorney fees "are subject to review and control by the courts," its failure to reduce the excessive attorney fee in the instant case suggests that future judicial reexaminations will afford Louisiana clients scant relief from unconscionable attorney fees. For it is unlikely that this Court will see many cases which cry out as much as this one for judicial intervention in the regulation of attorney-client fee arrangements.
The attorney was employed by Saucier shortly after his injury on February 9, 1971, and discharged on January 15, 1975; during this period he did not bring the case to trial, or discover the additional insurance coverage which led eventually to settlement. As far as can be ascertained from the record in this case, the attorney's services were not extensive. He filed a petition, received reports from doctors, answered one set of interrogatories, attended one pretrial conference, and filed two motions for the continuance of the trial of the case. The attorney did not attend or participate in any depositions, did not propound interrogatories, and made only minimal preparations for trial before he was discharged. The lawyer who defended the insurance company against Saucier's claim testified that, during the time Mr. Reese represented Saucier, insurance company counsel expended a total of forty-seven hours in representing the company and that these services had a fair value of $1,880.00. Moreover, the insurance company's attorney actively pursued the defense of the case by taking depositions and preparing the case for trial, and therefore probably expended more time on the case than Mr. Reese. Although the reasonableness of Mr. Reese's fee should not be evaluated solely on the basis of his time and labor, when all other pertinent factors are taken into consideration, see DR 2-106(B), the $25,000 fee collected by him in this case is clearly excessive. Accordingly, even under the vague theory of minimal review set forth by the majority the attorney fee should have been reduced substantially.
In summary, the majority has fallen into grave error in several respects: first, by interpreting the contingent fee contract herein as irrevocably assigning to the attorney ownership of a fixed percentage of the *114 client's claim which may be retained by the attorney regardless of the attorney's discharge before the performance of commensurate legal services; second, by finding an intention by the legislature in La. R.S. 37:218 to authorize and enforce an assignment to an attorney of such an unearned proprietary percentage interest in his client's recovery; third, by failing to recognize the supremacy of the rules of this Court which clearly forbid an attorney to retain an assignment of a fixed percentage of his client's claim without providing commensurate legal services; finally, by failing to reduce the clearly excessive fee in this case even under the erroneous statement of law contained in the majority opinion.
Wrong in both methodology and result, the majority opinion undoubtedly will produce undesirable future consequences. It will greatly discourage scrutiny of attorneys' fees by the trial and intermediate appellate courts, as well as make it economically impracticable for a client to discharge an attorney who has a contingent fee contract. The opinion may evince a newfound reluctance to exercise judicial powers in the regulation of court officers' conduct and signal this Court's retreat from the vigorous enforcement of legal ethics. In my opinion the majority has failed to recognize its true duty and responsibility in this case and has taken the bar and the judicial system of Louisiana in the opposite direction from which they should be headed.
I respectfully dissent.

On Rehearing
CALOGERO, Justice.
On original hearing the Court majority allowed an attorney, discharged by his client without cause prior to completion of the services he promised to perform upon execution of a one-third contingency fee contract, to receive a fee amounting to one-third of the recovery the client subsequently received with the aid of an attorney hired to replace discharged counsel.
The facts are fully set forth in the original and dissenting opinions and will not be repeated here. Suffice it to say that all of the judges reviewing this case in the Court of Appeal and in this Court have concluded that the client discharged the attorney without cause and before the client's settlement was ultimately concluded.
In our earlier opinion we related that a client may dismiss an attorney with or without cause, acknowledged Disciplinary Rule 5-103, Louisiana Code of Professional Responsibility,[1] and applied a provision of R.S. 37:218 allowing an attorney to acquire as his fee (by written contract signed by the client) an interest in the subject matter of the suit, or claim, virtually affording the attorney a vested interest in the subject matter of the suit.[2] Specifically we held "that an attorney discharged without cause prior to the completion of his services is entitled to the percentage fee stipulated in his contingent fee contract, drawn and recorded in conformity with LSA-R.S. 37:218, when the client subsequently recovers from the adverse party."
Upon reconsideration, the rehearing prompted chiefly by the change in composition of this Court's membership between rendition of the judgment herein and consideration of the application for rehearing, we conclude differently, as will be evident in the discussion which follows.[3]
*115 When the contingency fee contract was confected, and at the time the discharged attorney filed the contract, R.S. 37:218 provided:
"By written contracts signed by the client, attorneys at law may acquire as their fee an interest in the subject matter of the suit, proposed suit, or claim in the prosecution or defense of which they are employed, whether the suit or claim be for money or for property. In such a contract for employment, it may be stipulated that neither the attorney nor the client may, without the written consent of the other, settle, compromise, release, discontinue or otherwise dispose of the suit or claim. Either party to the contract may, at any time, file it with the clerk of the district court in which the suit is pending or is to be brought and have an original or certified copy made and served by registered or certified mail or the opposing party. After such service, any settlement, compromise, discontinuance, or other disposition made of the suit or claim by either the attorney or the client without the written consent of the other is null and void and the suit or claim shall be proceeded with as if no such settlement or discontinuance had been made."[4]
Whether this statute can be interpreted reasonably and within constitutionally permissible bounds is the subject of our outset consideration in this opinion. Essentially we find that when considered in light of other legal principles which govern the conduct of an attorney and his relationship with his client, this statute cannot be construed to authorize an attorney to acquire by assignment the actual ownership of a fixed percentage of his client's claim as consideration for the attorney's promise to perform legal services. However, as will be set forth in the following discussion, we find that the statute can be reasonably interpreted in such a way as to render it applicable to the contract before us.
In deciding this case we recognize as a primary consideration the Court's duty to assert the authority conferred by the Constitution to regulate the practice of law, which stems from the grant of original exclusive jurisdiction of disciplinary proceedings against a member of the bar. La. Const. Art. V, § 5(B); see Louisiana State Bar Association v. Edwins, 329 So.2d 437 (La.1976). As set forth more fully in the dissent on original hearing, this Court's prevailing judicial authority resulted in the adoption and promulgation of the Articles of Incorporation of the Louisiana State Bar Association, which Articles came to incorporate the Code of Professional Responsibility, in lieu of the Canons of Professional Ethics. The Code of Professional Responsibility which regulates attorneys' practices has been recognized as having the force and effect of substantive law. As a result, these rules set forth by virtue of the Court's exercise of its prevailing judicial authority override legislative acts which tend to impede or frustrate that authority; only legislative enactments in this area which aid the Court's inherent powers will be approved.
It is against this background that we consider the applicability of R.S. 37:218, the statute which the majority on original hearing interpreted as virtually conferring upon the attorney availing himself of its *116 provisions a vested interest in the subject matter of the claim.[5] We must determine whether R.S. 37:218 is susceptible of an interpretation which will permit an attorney discharged without cause to collect the contracted-for fee in a contingency fee contract, notwithstanding the services he agreed to provide have not been completely performed. In making this determination, we must be guided by the rules this Court itself adopted for the regulation of the practices of members of the legal profession. Pertinent to our examination are Disciplinary Rules 5-103(A)(1) and (2), quoted fully in a footnote at the outset of this opinion, and portions of 2-106 and 2-110, which provide in relevant part:
DR2-106. Fees for Legal Services.
(A) A lawyer shall not enter into an agreement for, charge, or collect an illegal or clearly excessive fee.
(B) A fee is clearly excessive when, after a review of the facts, a lawyer of ordinary prudence would be left with a definite and firm conviction that the fee is in excess of a reasonable fee.
Factors to be considered as guides in determining the reasonableness of a fee include the following:
(1) The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly.
(2) The likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer.
(3) The fee customarily charged in the locality for similar legal services.
(4) The amount involved and the results obtained.
(5) The time limitations imposed by the client or by the circumstances.
(6) The nature and length of the professional relationship with the client.
(7) The experience, reputation and ability of the lawyer or lawyers performing the services.
(8) Whether the fee is fixed or contingent.
DR2-110. Withdrawal from Employment.
(A) In general.

* * * * * *
(3) A lawyer who withdraws from employment shall refund promptly any part of a fee paid in advance that has not been earned.
B) Mandatory withdrawal.
A lawyer representing a client before a tribunal, with its permission if required by its rules, shall withdraw from employment, and a lawyer representing a client in other matters shall withdraw from employment, if:

* * * * * *
(4) He is discharged by his client.
The unique nature of the attorney-client relationship and the position which the attorney occupies in relation to society provide a sound basis for the existence and enforcement of the quoted Disciplinary Rules.[6] But the Disciplinary Rule implicitly recognizing the client's absolute right to discharge his attorney is stripped of effect if the client's exercise of that right is conditioned upon his payment of the full amount specified in the contract. And permitting a lawyer to reap in full measure the contracted-for fee provided in a contingency fee contract without providing all or substantially all of the legal services contemplated by the contract clearly violates the strictures of DR2-106.
Therefore, if the only reasonable construction of R.S. 37:218 authorized contracts between attorney and client which contravene the Disciplinary Rules which govern the attorney's conduct, we would be required to disapprove the statute and deprive *117 it of force and effect. But we find that the statute is susceptible of a reasonable interpretation which does not bring it into irreconcilable conflict with the limitations set forth by the Disciplinary Rules. As concisely expressed in the dissent on original hearing,
"Under our rules an attorney clearly may contract with a client to provide legal services for a fee contingent and calculated upon the amount recovered or preserved, so long as the contract does not restrict the client's right with or without cause to discharge the attorney, or grant as a fee to the attorney without requirement of commensurate services an immutable proprietary percentage of the client's claim, or result in an attorney collecting a `clearly excessive' fee which has not been `earned' as defined by the rules."
A reasonable interpretation of R.S. 37:218 leads to the conclusion that it does not essentially conflict with the Disciplinary Rules. The statute allows the lawyer who is a party to an employment contract to secure an interest in his client's claim, but the nature of that interest is not established by the provisions of the statute. Because the Disciplinary Rules prohibit the acquisition of an absolute ownership interest in the client's claim prior to his performance of all or substantially all the legal services, the "interest in the subject matter of the suit, proposed suit or claim" safeguarded by the statute is, we believe, no more than a privilege granted to aid the attorney's collection of a fully earned fee out of the fund which the satisfaction of the client's claim yields. Compliance with the statute would result in the creation of a cause of action against the client and the opposing party for such fee as is legal and is earned in the event a settlement or other disposition results without the consent of the lawyer. These effects of the statute do no violence to the Disciplinary Rules adopted by the Court to regulate the practices of members of the bar. Thus, the statute, accorded this reasonable interpretation, in conjunction with the various applicable disciplinary rules, may be applied to the contingency fee contract under consideration.
The seemingly offensive provision of the contingency fee contract is seen as effecting the unrestricted assignment of one-third of Saucier's claim to the attorney. However, we construe what we perceive to be ambiguous language of the contract effecting assignment to provide that the assignment is to be contingent upon the contracting attorney's successful performance of an obligation to reduce the claim to damages, for the contract provides for assignment in consideration of services rendered "if it is to be resolved that the claim is one for damages." Thus interpreted, the contract conditions payment of the full one-third upon performance of all or substantially all legal services necessary to accomplish settlement or other disposition which reduces the claim to damages. The attorney's election to avail himself of the provisions of R.S. 37:218 preserved to him the right to collect earned fees out of the proceeds of the claim if settlement or disposition without his consent took place. The collection of excessive amounts for which no commensurate service was performed is not vouchsafed by the provisions of the statute.
We regard the contract as providing a fee of one-third of the client's claim only upon performance of all or substantially all of the legal services contemplated by the contract. Because the contract as we interpret it does not contravene the laws affecting the conduct of attorneys in the realm of fee agreements, acquisition of proprietary interest in a cause of action, or discharge and withdrawal of attorneys from representation, the discharged attorney involved in this case may enforce the privilege accorded him by R.S. 37:218 and recover whatever fee he has earned which is not clearly excessive, up to the contractual maximum of one-third of Saucier's claim.
Determination of just what non-excessive fee the discharged attorney has "earned" in the case of the contingency fee employment contract (followed by discharge, employment of other counsel and *118 settlement) is not a simple matter. Focusing alone upon the attorney's investment of time, or even considering in addition such matters as counsel's skill, the importance of the case and other readily identifiable factors, does an injustice to the attorney. Such focus is at least at variance with the reality of the employment contract, for it is quite possible that the attorney would have been unwilling to undertake representation, fee contingent upon recovery, if told at the outset that the client would, or would be able to, discharge him and pay him on some basis other than the agreed upon percentage, and only if and when, with subsequent employed counsel (perhaps not as able as original counsel) the client were to win a settlement or judgment.
The exercise of our authority to regulate the practice of law, which encompasses the power to exert control by means of adjudication of individual cases as they arise,[7] requires that we enforce the Disciplinary Rules of the Code of Professional Responsibility, including those earlier quoted, relative to the discharge of counsel and regulation of fees. Considering the peculiar nature of the contingency fee contract, its social importance, and its potential for abuse as well, in light of our duty to enforce the Disciplinary Rules, we conclude that only one contingency fee should be paid by the client, the amount of the fee to be determined according to the highest ethical contingency percentage to which the client contractually agreed in any of the contingency fee contracts which he executed. Further, that fee should in turn be allocated between or among the various attorneys involved in handling the claim in question, such fee apportionment to be on the basis of factors which are set forth in the Code of Professional Responsibility.
We believe that this resolution comports with the letter and spirit of the Code of Professional Responsibility. It is an equitable solution to this problem. The amount prescribed in the contingency fee contract, not quantum meruit, is the proper frame of reference for fixing compensation for the attorney prematurely discharged without cause. We choose to vindicate the contingency fee contract rather than render it nugatory. In this way the client is prevented from reaping any possible unfair advantage resulting from the discharge of his attorney.[8] Similarly by this resolution the client is not exposed to the risk of being penalized by being required to pay excessive and duplicitous legal fees for having chosen to exercise his right to discharge one attorney and retain the services of another. In the future, both client and attorney involved in a contingency fee contract will realize that only one maximum contingency fee to which the client agrees will be paid.
This solution envisions apportionment of only the highest agreed upon contingent fee in accordance with factors set forth in the Code of Professional Responsibility. Thus the fee is to be apportioned according to the respective services and contributions of the attorneys for work performed and other relevant factors. Resort to the Code of Professional Responsibility also will have in the future a salutary effect of assuring that unethical conduct, such as solicitation on the part of one attorney of another's client, will not be countenanced or rewarded. Knowing that a contingent fee may have to be shared provides an incentive for successor attorneys to encourage a client who has no just cause for complaint to maintain relations with his first attorney. And it encourages the lawyer first retained to seek resolution of the client's misgivings, thereby avoiding needless controversy and engendering public respect. We believe that this resolution will discourage professional disputes and encourage out-of-court settlements since each attorney will be encouraged *119 to emphasize the positive contribution he made to the end result and subsequent counsel will be less inclined to contend there was cause to discharge all previous counsel. Perhaps more significant even than the foregoing reasons, which relate to governance of attorneys and the practice of law, is the fact that this solution should assure fair treatment of the client who will never be compelled to pay more than one reasonable contingency fee in an amount he has agreed to pay. And it permits the client to change attorneys without acting to his financial peril, whether or not he has "cause" to make the change in attorneys.
At this time the second attorney, his fee contract and the amount and character of his services are not before the Court. It is therefore evident that adjudication of this matter upon remand in accordance with the principles enumerated herein cannot be accomplished without joinder of this indispensable party. La.C.Civ.P. arts. 641, 645 and 927.
On remand of these proceedings the trial court should require that the second attorney be joined as an indispensable party for a full and proper adjudication of this entire matter.[9]
This Court should not and will not countenance the payment of duplicitous and/or excessive fees. Nor will we allow the first attorney to be denied payment of the fee to which he is entitled. Therefore if the second attorney has already collected his contingent fee, and if the client, Mr. Saucier, asserts his right to recover from the second attorney the money paid to which the attorney is not entitled, that second attorney should be ordered to restore the same to Mr. Saucier as having been a payment of a thing not due. La.Civ.Code art. 2301. The second attorney, along with the first attorney, will then be accorded the opportunity to establish his right to receive an appropriate apportionment of the one contingent fee owed by Mr. Saucier for legal services rendered in connection with his claim.

Decree
For the reasons assigned, the judgment of the Court of Appeal is reversed and the case is remanded to the trial court for further proceedings consistent with this opinion.
REVERSED; REMANDED TO DISTRICT COURT.
SUMMERS, C. J., dissents and assigns reasons.
DIXON, J., dissents with reasons.
MARCUS, J., dissents.
SUMMERS, Chief Justice (dissenting).
The cornerstone of this majority opinion is the theory that by the exercise of its judicial and inherent powers the Court may disregard and amend the clear provision of a solemn expression of the legislative will. I do not agree.
No authority is cited to support this irrational usurpation of legislative authority. The Canons of Professional Responsibility are merely "administrative" rules of this Court enacted to regulate the practice of law. As such these rules may not under constitutional limitations found in Article V, Section 5(A), be "in conflict with law."[1] The Court may not invest its rules with substantive authority inconsistent with legislative enactments. The enactment of substantive rules of law is a legislative power, not to be trenched upon by courts.
I would adhere to this Court's original opinion.
DIXON, Justice (dissenting).
I respectfully dissent.
*120 The majority opinion permits litigants to discharge lawyers without justification and without penalty, pegging the fee at whatever percentage of the recovery the first lawyer fixed in his "contract;" the opinion further permits any lawyer in town (the client's cousin or brother-in-law?) to share in the first lawyer's fee.
The Court of Appeal found that there was no evidence that intervenor did not perform satisfactorily; that he maintained full communication with his client; that intervenor's continuous efforts was the main factor which brought about the settlement in the amount of $75,000. Nothing in the majority opinion indicates how the Court of Appeal mistakenly reached these factual conclusions. Therefore, I would agree with the Court of Appeal in awarding the intervenor one-third of the amount recovered as the attorney fee.
Regardless of the nature of the contingent fee contract, the regulation of the attorney's fee remains under the supervision of the courts. If the full one-third of the amount recovered is excessive, in view of all the legitimate considerations for the determination of the amount of an attorney's fee, then it should be reduced by the court. The fee is the property of the lawyer, subject only to reduction if found to be excessive.
It seems unnecessary in the decision of this case to attempt to decide the nature of the attorney's right under R.S. 37:218. Nor is it necessary to determine whether, under any circumstances, our statutes and canons permit the acquisition of a present ownership interest in the subject matter of a suit.
If that were a relevant inquiry this court ought to hold that an attorney is permitted under the statutes, the cases of this court and the canons (rules of this court) to acquire, in appropriate cases, a present ownership (a proprietary interest) as a contingent fee in a civil case. Of course, the acquisition of such ownership would not end the matter. The obligation of the attorney to perform remains. The size of the fee, as between the lawyer and the client, will be subject to review at the proper stage.
Nothing prohibits a lawyer from receiving his fee in advance; the fee then belongs to him. He might, however, under several circumstances be required to repay his client for what he had not earned, or for that portion of the fee which was excessive.
Contingent fee contracts are discussed in the ethical considerations of the canons:
"EC 2-20. Contingent fee arrangements in civil cases have long been commonly accepted in the United States in proceedings to enforce claims. The historical bases of their acceptance are that (1) they often, and in a variety of circumstances, provide the only practical means by which one having a claim against another can economically afford, finance, and obtain the services of a competent lawyer to prosecute his claim, and (2) a successful prosecution of the claim produces a res out of which the fee can be paid. Although a lawyer generally should decline to accept employment on a contingent fee basis by one who is able to pay a reasonable fixed fee, it is not necessarily improper for a lawyer, where justified by the particular circumstances of a case, to enter into a contingent fee contract in a civil case with any client who, after being fully informed of all relevant factors, desires that arrangement. Because of the human relationships involved and the unique character of the proceedings, contingent fee arrangements in domestic relation cases are rarely justified. In administrative agency proceedings contingent fee contracts should be governed by the same considerations as in other civil cases. Public policy properly condemns contingent fee arrangements in criminal cases, largely on the ground that legal services in criminal cases do not produce a res with which to pay the fee."
"EC 5-7. The possibility of an adverse effect upon the exercise of free judgment by a lawyer on behalf of his client during litigation generally makes it undesirable for the lawyer to acquire a proprietary interest in the cause of his client or otherwise to become financially interested in the outcome of the litigation. However, *121 it is not improper for a lawyer to protect his right to collect a fee for his services by the assertion of legally permissible liens, even though by doing so he may acquire an interest in the outcome of litigation. Although a contingent fee arrangement gives a lawyer a financial interest in the outcome of litigation, a reasonable contingent fee is permissible in civil cases because it may be the only means by which a layman can obtain the services of a lawyer of his choice. But a lawyer, because he is in a better position to evaluate a cause of action, should enter into a contingent fee arrangement only in those instances where the arrangement will be beneficial to the client."
We should not unnecessarily cast doubts on contingent fee arrangements which we have recognized and approved in the past, under which attorneys at law have received, as a contingent fee, a present ownership interest in the subject matter of the litigation. See for example, Oil Purchasers, Inc. v. Kuehling, 334 So.2d 420 (La.1976); Hope v. Madison, 194 La. 337, 193 So. 666 (1940).
It is true that conflicting interests are involved in regulating the employment and compensation of attorneys, and that the right of a client to discharge his lawyer without cause, at will, should be preserved. If the lawyer is discharged for cause, he is not entitled to the unearned fee. If he is discharged without cause, as in this case, he is entitled to the fee provided in the contract of employment (C.C. 2040), unless that fee is reduced by the court for excessiveness. The client can fire the lawyer when he wishes, without cause, but he must pay the fee, unless it is found to be excessive.
There is nothing illegal or immoral about the contingent fee contract, and nothing unjust has been shown about this one. Our original opinion, affirming the Court of Appeal, should be reinstated.
NOTES
[1] I do not here reach the substantial issue of whether the long delay in bringing this 1971 claim for trial did not afford good cause to the client to change attorneys, as may well have been indicated by the trial court's award to the attorney of only $3,000 for the value of his services performed prior to the discharge.
[1] La-R.S. 37:218 was subsequently amended by Act 670 of 1975 to provide that the contract may be filed either in the parish in which the client is domiciled or with the designated clerk of court. e.
[1] La.R.S. 37:218 was subsequently amended by Act 670 of 1975 to provide that the contract may be filed either in the parish in which the client is domiciled or with the designated clerk of court.
[2] The constitutional principle that the judicial branch has supreme authority over regulation of the conduct of all its officers, including attorneys, is well established in this State, Louisiana State Bar Ass'n. v. Edwins, supra; Louisiana State Bar Ass'n. v. Connolly, 201 La. 342, 9 So.2d 582 (1942); Ex Parte Steckler, supra; Meunier v. Bernich, supra, and has been recognized generally by other state supreme courts. See, e. g., Matter of Washington State Bar Ass'n., 86 Wash. 624, 548 P.2d 310 (1976); Board of Comm'rs. of the Ala. State Bar v. State ex rel. Baxley, 324 So.2d 256 (Ala. 1975); American Trial Lawyers v. New Jersey Supreme Court, 66 N.J. 258, 330 A.2d 350 (1974); Sharood v. Hatfield, 296 Minn. 416, 210 N.W.2d 275 (1973); In re Member of Bar, 257 A.2d 382 (Del.1969); Wallace v. Wallace, 225 Ga. 102, 166 S.E.2d 718, cert. denied, 396 U.S. 939, 90 S.Ct. 369, 24 L.Ed.2d 240 (1969); Collins v. Godfrey, 324 Mass. 574, 87 N.E.2d 838 (1949); In re Sparks, 267 Ky. 93, 101 S.W.2d 194 (1937); In re Integration of Nebraska State Bar Ass'n., 133 Neb. 283, 275 N.W. 265 (1937). See also, Scheisinger v. Teitelbaum, 475 F.2d 137 (3d Cir. 1973), cert. denied, 414 U.S. 1111, 94 S.Ct. 840, 38 L.Ed.2d 738 (1973); Barlon v. Sarlot, 47 Cal.App.3d 304, 120 Cal.Rptr. 675 (1975).
[3] "(A) A lawyer shall not acquire a proprietary interest in the cause of action or subject matter of litigation he is conducting for a client, except that he may:

(1) Acquire a lien granted by law to secure his fee or expenses.
(2) Contract with a client for a reasonable contingent fee in a civil case."
[4] "(B) Mandatory withdrawal.

A lawyer representing a client before a tribunal, with its permission if required by its rules, shall withdraw from employment, and a lawyer representing a client in other matters shall withdraw from employment, if:
* * * * * *
(4) He is discharged by his client."
[5] "(A) In general.

* * * * * *
(3) A lawyer who withdraws from employment shall refund promptly any part of a fee paid in advance that has not been earned."
Although this rule relates to fees paid in advance it applies with no less force to any fee.
[6] "(A) A lawyer shall not enter into an agreement for, charge, or collect an illegal or clearly excessive fee."
[7] "(B) A fee is clearly excessive when, after a review of the facts, a lawyer of ordinary prudence would be left with a definite and firm conviction that the fee is in excess of a reasonable fee."
[8] Numerous state courts have held that an attorney may not recover for services rendered pursuant to an employment agreement in contradiction of court rules or other requirements of professional responsibility. Rolfstad, Winkjer, Suess, McKennett and Kaiser v. Hanson, 221 N.W.2d 734 (N.D.1974); Laughlin v. Boatmen's Nat'l. Bank, 163 S.W.2d 761 (Mo. 1942); Jeffry v. Pounds, 67 Cal.App.3d 6, 136 Cal.Rptr. 373 (1977); Academy of Cal. Optometrists, Inc. v. Superior Court, 51 Cal.App.3d 999, 124 Cal.Rptr. 668 (1975); Goldstein v. Lees, 46 Cal.App.3d 614, 120 Cal.Rptr. 253 (1975).
[9] Additionally, a special privilege is granted to an attorney for his fee on a judgment obtained by him, and on property received thereby. La. R.S. 9:5001.
[10] Compare Civil Code principles relative to the debtor's right to get himself released by paying to the transferee of a litigious right the real price of the transfer. La.C.C. art. 2652; 2 M. Planiol, Civil Law Treatise, pt. 1, no. 1649 at 912 (11th ed. La.St.L.Inst. transl. 1959).
[1] DR 5-103 dictates essentially that with minor exceptions a lawyer shall not acquire a proprietary interest in a cause of action or subject matter of litigation. It provides, in pertinent part:

"(A) A lawyer shall not acquire a proprietary interest in the cause of action or subject matter of litigation he is conducting for a client, except that he may:
(1) Acquire a lien granted by law to secure his fee or expenses.
(2) Contract with a client for a reasonable continent fee in a civil case."
[2] We use the word "virtually" rather than "actually" because under the majority's analysis entitlement to the fee is not unconditional; the attorney's discharge must not be for cause.
[3] In this opinion, especially in portions with express acknowledgment, the author draws liberally from the able dissent written by Mr. Justice Dennis on original hearing (hereinafter referred to simply as the dissent). The author joined in that dissent.
[4] R.S. 37:218 was later amended, in 1975, by Act 670. It now provides:

"By written contract signed by his client, an attorney at law may acquire as his fee an interest in the subject matter of a suit, proposed suit, or claim in the assertion, prosecution or defense of which he is employed, whether the claim or suit be for money or for property. In such contract, it may be stipulated that neither the attorney nor the client may, without the written consent of the other, settle, compromise, release, discontinue or otherwise dispose of the suit or claim. Either party to the contract may, at any time, file and record it with the clerk of court in the parish in which the suit is pending or is to be brought or with the clerk of court in the parish of the client's domicile. After such filing, any settlement, compromise, discontinuance, or other disposition made of the suit or claim by either the attorney or the client, without the written consent of the other, is null and void and the suit or claim shall be proceeded with as if no such settlement, compromise, discontinuance, or other disposition had been made."
[5] See footnote 2
[6] The character of this relationship between attorney and client is set forth at greater length in the dissent on original hearing. That dissent also provides (at p. 111) a fuller discussion of the justification for strict regulation of the conduct of members of the bar.
[7] See Meunier v. Bernich, 170 So. 567 (Orl.La. App.1936).
[8] The rationale of this holding would likewise thwart the client's last minute attempt to supplant his original attorney with another or to proceed in proper person so as to obviate responsibility for payment of a contingent fee after substantially all of the legal services contemplated by the contract have been performed and settlement or judgment has been obtained or is imminent.
[9] Both Article 645 and Article 927 of the Code of Civil Procedure provide that failure to join an indispensable party may be noticed by the trial or appellate court on its own motion.
[1] La.Const. art. V, § 5(A) provides "The supreme Court has general supervisory jurisdiction over all other courts. It may establish procedural and administrative Rules not in conflict with law and may assign a sitting or retired judge to any court." (emphasis added).