MURRAY, J.,
dissents in part and assigns reasons.
| j I agree with the majority with regard to the amendment of the judgment relative to legal interest and the conclusion that the trial court abused its great discretion in its award of $112,850 attorney fees to OCB in connection with its representation of Brenda Verges. However, for the following reasons, I disagree with the amount of fees to which it determines OCB is entitled.
Brenda Verges contracted with OCB to represent her on an hourly basis beginning in September 2001. According to the testimony of Christopher Beary, Ms. Verges was struggling to make the hourly payments. She did not pay anything on the invoices for September, October, November, and December of 2001, or January and February of 2002 until March 2, 2002; at that time she made a partial payment of $5,000 leaving an unpaid balance of $2,348.78.[1] She was billed hourly for the months of March, April, June, July, and August of 2002, but as of September 5, 2002, she had not been able to pay anything towards those billings. On that date Ms. Verges and OCB converted their arrangement for the firm’s representation from hourly billings to a contingency fee arrangement. They agreed that the firm would be paid a 30% contingency fee on the amount recovered, excluding any portion of the recovery attributable to the sale of the property at |2issue in the litigation. OCB would waive the unpaid hourly billings totaling $7,162.50. Ms. Verges was to pay all costs as they were incurred in the future.
The firm continued to represent Ms. Verges for another seven months until it notified her that it was terminating its representation on April 16, 2003, the day following an unsuccessful mediation. The firm advised Ms. Verges that the evidence had developed such that the value of her claim realistically had been reduced by more than 30% of that originally placed on the case. As a consequence of the reduced value of the claim and the firm’s appreciation that Ms. Verges was unwilling to adjust her expectations, OCB was making a business decision to withdraw from her representation at that time as it felt that the fee potential of the case would not justify the time necessary to prepare the matter for trial. As OCB explained, based on the circumstances, the firm, essentially, would be working for free; as it explained, it had “too many other irons in the fire to do what is entailed to get this matter ready for trial and try it ...”
In the letter of withdrawal, OCB opined that Ms. Verges “should not have any trouble obtaining other counsel to take over the case” as the bulk of the work had been done by it. It advised Ms. Verges that the firm would file its contract with the court and request an apportionment of fees “from any subsequent settlement or judgment between us and your new coun *317 sel; consequently, there will be no additional charge to you.”
Despite having withdrawn from its representation, OCB agreed to continue to work through the negotiation process until new counsel was engaged in July 2003.[2] The ease ultimately was settled for $440,000, which did not include the sale of the property.
|3It is apparent that, at the time it withdrew, OCB anticipated that Ms. Verges would engage another attorney on a contingency fee basis. Had this occurred, one contingency fee would have been paid by Ms. Verges, “the amount of the fee to be determined according to the highest ethical percentage to which the client contractually agreed in any of the contingency fee contracts that he executed.” Saucier v. Hayes Dairy Products, Inc., 373 So.2d 102, 118 (La.1978). That fee would then have been apportioned between OCB and the successor firm “according to the respective services and contributions of the attorneys for the work performed and other relevant factors.” Id. Assuming that the highest ethical percentage to which Ms. Verges agreed was 30%, the attorney fee she would have owed on the $440,000 recovered would have been $132,000.
Unfortunately, Hulse and Wanek (H & W), the successor firm hired by Ms. Verges was not willing to take the case on a contingency basis. Ms. Verges agreed to pay H & W at the rate of $175.00 per hour. According to the detailed billing statements in evidence, the total number of hours expended by H & W from July of 2003 through July of 2007 was 315; the total fee paid to H & W was $54,356.12.
As the majority points out, unlike Saucier, this case does not involve a fee dispute between two firms, each of whom represented the plaintiff on a contingency basis. However, it does not follow that the principles articulated in Saucier cannot provide guidance for addressing the particular situation presented here. In Saucier the court sought to ensure that a client would not be deprived of the right to discharge the attorney for fear of incurring multiple fees, while recognizing the discharged attorney’s right to receive fair compensation for work performed before being discharged. In essence, the Court was concerned that all parties be treated fairly. That concern applies equally to the situation where, as here, an attorney withdraws from its contingency fee representation, and the successor attorney undertakes the representation on an hourly basis. The award of ^attorney’s fees to OCB by the trial court herein does not dispel that concern as it does not appear to be fair to all parties.
OCB put on evidence of the extent of the work done by it during the seventeen months it represented Ms. Verges. Once OCB converted its representation from hourly to a contingency fee basis, it no longer kept detailed time records. Mr. Beary testified that the compilation of time expended by OCB was his “best estimate” looking back through the case file on “a per category basis, trying to identify how many hours would have been spent.” The total hours estimated to have been spent by OCB during its representation of Ms. Verges during the period it represented her on a contingency basis was 681. OCB represented the value of that work, based on $150 per hour, the hourly fee at which they initially contracted with Ms. Verges, to be $105,750. Adding to that the $7,100 unpaid balance that was waived upon en *318 tering into the contingency fee arrangement, OCB valued its services to Ms. Verges to be $112,850. The trial court found that OCB has “proved the hourly value of their services to be $112,850,” and found this amount to be fair compensation to OCB for its services.
The majority recognizes a discrepancy in OCB’s itemization; it finds that the corrected total of the claimed value of the OCB services is $109,250.00, a $3,600 discrepancy. The majority further finds that the trial court failed to take into account the adverse effect of OCB’s withdrawal from its representation of Ms. Verges. The majority identifies those consequences as the cost of H & Fs review and necessary duplication of OCB work ($15,288.40) plus the differential between the $25 per hour differential ($5,396.25) between the OCB and H & W hourly rates. The majority, therefore, reduces the award of attorney fees to OCB to $88,565.35.
Were the trial court’s award to stand the total fees paid by Ms. Verges to resolve this claim would be $167,206.12, or $35,206.12 more than the highest fee she would have paid to OCB had it not withdrawn from its representation. Under |5the majority’s amended award the total attorney fees paid by Ms. Verges is $88,565.35 or $10,921.47 more than the fee that Ms. Verges would have owed under the OCB contingency arrangement.
OCB and Ms. Verges entered into a 30% contingency fee contract. Based on the recovery, Ms. Verges would have expected to pay $132,000 for legal services. She was assured by OCB that there would be an “apportionment” of fees between it the successor attorney so that she would incur “no additional charge.”
When OCB agreed to represent Ms. Verges for a 30% contingency fee, it anticipated that its fees, if it were successful, would be capped at that level. At that point, it agreed to take the risk of non-recovery. When it withdrew from its representation of Ms. Verges she was put in the position of having to obtain representation on an hourly basis. Her exposure at that point was not limited to a percentage of her recovery. In fact, she faced exposure for more fees, regardless of whether she was successful. Although she eventually paid her successor lawyer $54,356.12, she potentially would have been responsible for considerably more fees had the matter required trial and appeal.
Although OCB was free to make a “business” decision that it could not afford to continue its representation, it should not now receive a windfall because it withdrew. I, therefore, would cap Ms. Verges’ attorneys fee in this matter at $132,000, the maximum amount to which OCB would have been entitled had it seen the case through to completion. From that I would deduct $54,356.12 the amount that Ms. Verges was required to pay the successor firm to see the case through, and reduce the amount of fees awarded to OCB to $77,643.88.
It is apparent that OCB did a considerable amount of work in preparing the claim for mediation, and continued to negotiate the matter for Ms. Verges even after it withdrew. Although the hourly “best estimate” of 681 additional hours expended in seven months seems generous, it is evident that the work done by |fiOCB was utilized by the successor firm, and contributed to the successful resolution of the claim. Had both OCB and H & W been representing Ms. Verges on a 30% contingency basis there is no doubt, based on the relevant factors in this case, that OCB would have been entitled to a larger portion of the contingency fee than H & W. An award of $77,643.88 is an equitable award to OCB, recognizing its contribution to the successful resolution of the claim, but not *319 rewarding it beyond its bargained for fee for having made a “business decision” to withdraw before completion of the case.

. According to Mr. Beary, this amount was "paid up” at some point in time.

. Although Ms. Verges obtained her files from OCB in April 2003, H & W did not do any work on the case until July 2003.