STOKER, Judge.
This is a suit on behalf of Miller and Miller, a Professional Law Corporation, to recover amounts due under a contingency fee contract entered into with personal injury ■ claimants Jonas and Amelia Meche. Before Miller and Miller had opportunity to perform substantial services under the contract, the Meches discharged the firm. The Meches then employed another attorney, John W. Johnson, and entered a contingency fee contract with him. Johnson performed services which resulted in a settlement of the two Meche claims. The Miller firm is entitled to a share in the contingency fee generated by the services of the two sets of attorneys. This appeal presents two issues: (1) which contingency fee contract governs as to the proper percentage which should be charged as the contingency fee, and (2) what is the proper split between the two sets of attorneys?
FACTS
The Meches’ contingency fee contract with Miller and Miller provided for an increasing fee schedule — 33⅜% of the gross settlement made if the case settled prior to filing suit and 40% of the gross settlement made if the case settled after the filing of suit. Michael B. Miller of Miller and Miller provided legal services to the Meches for approximately five weeks. However, the Meches discharged Miller prior to the completion of his services and retained the services of attorney John W. Johnson. The contingency fee contract with Johnson specified fees of 25% if settlement should be effected before filing of suit and of 33½% of if effected after filing of suit. Johnson eventually negotiated a settlement of Amelia Meche’s claim without filing suit on her behalf and a settlement of Jonas Meche’s claim after filing suit on his behalf. Johnson received 25% of Jonas Meche’s gross settlement and 25% of Amelia Meche’s general damages.
Miller filed suit against the Meches, Jacky Dorris (driver of the vehicle which struck the Meche vehicle from behind), Alabama Live Poultry, Inc., a/k/a Alabama Live Poultry (owner of the vehicle driven by Dorris), and Home Insurance Co. (insurer of the vehicle driven by Dorris) to recover attorney fees under the contingency fee contract and out of pocket expenses. Miller sought attorney fees calculated at 40% of the gross settlement less amounts paid to Johnson. Defendants — Dorris, Alabama Live Poultry, Inc., and Home Insurance Co. filed a suit against the Meches and a third party demand against attorney John Johnson in Miller’s suit. The Meches were discharged in bankruptcy.
TRIAL COURT ACTION
The trial court found that the Meches discharged Miller without cause, and defendants do not dispute this finding on appeal. The court found that the highest ethical contractual maximum to which the Meches could be held was 33½% rather than 40%. The court also found that Johnson earned 30⅜% and Miller earned 3% of the gross settlement, that Johnson waived his share of the fee over 25% (8⅛%) and that Miller was not entitled to the full 8⅜% amount waived by Johnson.
For the sake of clarity, we will set forth in some detail the mathematics of the complaint which the Miller firm makes in this appeal. In the alternative that the trial court was correct in basing the total attorney fee on 33½% rather than 40%, appellant argues as follows. Johnson received only 25% of the Meches’ recoveries. The trial judge made his award to appellant based on a percentage of 33⅜%. Since the trial judge awarded appellant only 3%, 5½% was not distributed. Appellant claims that this 5½% which was waived by Johnson should redound to it rather than to the benefit of the defendants. More graphically, the calculations are as follows:
.33⅝% Ethical maximum contingent fee allowed.
.25% Percentage accepted by Johnson.
.08½% Amount waived by Johnson.
.03% Amount awarded to Miller and Miller.
.05⅛% Amount the Miller firm asserts was not distributed and which it asserts should be awarded to it in addition to 3%.
*345 The court dismissed defendants’ third party demand against Johnson.
APPELLANT’S CONTENTIONS ON APPEAL
The Miller firm appeals, alleging that:
1. The trial court erred in applying the 33⅜% rather than the 40% contingency fee; and
2. The trial court erred in failing to disperse to Miller the 5½% fee waived by Johnson, that is, in addition to the 3% awarded to Miller.
We affirm.
TRIAL COURT’S REASONS FOR JUDGMENT
We quote in part the trial court’s well written reasons for judgment:
“Mike Miller testified that he represented the Meches from September 15, 1986 until they retained Mr. Johnson. The Meches provided him with the name of Alabama Poultry and the driver, but they did not know whether they had insurance. Mr. Miller arranged for Mr. Meche to see a doctor. He wrote letters to Jacky Dorris, Alabama Poultry, Louisiana Department of Public Safety and the Secretary of State. Mr. Miller stated that over a period of one month he had about five office visits with Mr. Meche and about two telephone calls. He further stated that Mr. Meche would go to his office to pick up checks for medical services. Mr. Miller indicated that when the Meches retained Mr. Johnson, he sent him some items from the file. After they discussed a fee agreement without resolution, Mr. Miller filed the contingency agreement that he had with the Meches with the Clerk of Court....
“According to Saucier vs. Hayes Dairy Products, Inc., 373 So.2d 102 (La.1979), compliance with the statute would result in the creation of a cause of action against the client and the opposing party for such fee as is legal and is earned in the event settlement or other disposition takes place without the consent of the attorney. In the case at issue, since a settlement took place without Mr. Miller’s consent and he complied with La. R.S. 37:48 [sic], he has a right to pursue his claim against Home Insurance Company, Alabama Live Poultry, Inc., and Jacky Dor-ris, the opposing parties.
“Saucier holds that when a client executes a contingency fee contract with an attorney and later discharges him without cause and hires a second attorney, only one contingency fee is to be paid by the client. This amount would be the highest ethical contingency percentage to which a client contractually agreed in any of the contingency contracts which he executed. Furthermore, the fee of this highest contingency percentage would then be allocated between or among the various attorneys involved in handling the claim based upon the factors set forth in the Code of Professional Responsibility, DR 2-106. Thus, the fee is to be apportioned according to the respective services and contributions of the attorneys for work performed and other relevant factors....
“The contract between Mr. Meche and Mr. Miller provides that the Meches shall pay Mr. Miller thirty-three and a third percent of any gross settlement if made before the filing of suit or forty percent of any gross settlement made after the filing of suit. Mr. Johnson’s contingency contract with the Meches was for thirty-three and a third percent of the settlement proceeds even though he only took twenty-five percent of the settlement received on behalf of Mr. Meche and waived the rest of his fee. On Mrs. Meche’s behalf he only charged her twenty-five percent of her general damages and waived the rest of his fee. Even though the agreement between the Meches and Mr. Miller did indicate that the contingency fee would be forty percent if suit was filed, that contract contemplated Mr. Miller filing suit on behalf of the Meches, not another attorney. Since suit was not filed by Mr. Miller, this Court is of the opinion that the contractual maximum shall be thirty-three and a third percent.
“Next, thirty-three and a third percent of the settlement proceeds must be apportioned among the two attorneys involved in handling this claim based upon the factors set forth in the Code of Professional Responsibility, DR 2-106. These factors are the time and labor required, novelty and difficulty of the ques *346 tions, the requisite level of skill, the likelihood the attorney will have to forego other employment to handle this matter, the customary fee for similar services, the amount involved and the result obtained, time limitations, the professional relationship between the attorney and client, the experience, reputation and ability of the attorney and whether or not the fee is fixed or contingent.
“The main issue in this case is whether Mr. Miller should be awarded the difference between what Mr. Johnson received (25%) and the full percentage of the contingency fee (33⅜%) or what this Court determines that he earned. Saucier contemplates that the maximum contingency percentage (thirty-three and a third percent in our case) is to be allocated among the attorneys, which implies that the entire amount of attorneys fees shall be collected by them according to their respective services rendered. This Court is of the opinion that since settlement funds were already distributed and Mr. Johnson took only twenty-five percent of the settlement fund which was less than what was provided for in his contract with the Meches and waived the rest, this ease shall be handled differently. Even though in theory this Court shall apportion the entire amount of attorney’s fees totaling thirty-three and a third percent of the gross settlement fund to these two attorneys by a percentage indicative of the amount of services rendered, in reality, Mr. Johnson will not receive what he has earned as a result of a waiver on his part. Even though we choose to use the method depicted in Saucier to apportion the attorney’s fees, this Court finds that Mr. Miller is not entitled to receive the amount of attorney’s fees that this Court determines Mr. Johnson earned but chose to waive. This Court shall use this method only to calculate the amount each attorney earned in this case.
“This Court is of the opinion that the services performed by Mr. Miller were very minimal especially in comparison to the work performed by Mr. Johnson. Since Mr. Miller only paid medical bills of $342.00 from September 15, 1986 through October 14, 1986, wrote a few letters and had only a few office visits and telephone calls with the Meches, this Court finds that he earned three percent of the gross amount collected whereas Mr. Johnson earned thirty and a third percent of the gross amount collected since he performed the majority of the work over a longer period of time. This Court finds that Mr. Miller is only entitled to a reasonable earned fee which we determine to be (three percent of $141,013.69) $4,230.41 plus interest. Furthermore, this decision is in accordance with Louisiana jurisprudence which gives the Courts the authority to reduce a contingency fee when it is found to be clearly excessive. Horton vs. Butler, 387 So.2d 1315 (La.App. 1 Cir.1980), writ denied, 394 So.2d 607 (La. 1980).”
OPINION
Highest Ethical Contingency Percentage Fee
We find no abuse of discretion in the trial judge’s selection of.33%% as the highest ethical percentage of the recovery to be applied in this case. No suit was filed on behalf of Amelia Meche. As the contract with Miller and Miller called for 33½% if settlement was made prior to suit, that percentage is clearly proper as to her recovery.
Although Jonas Meche contracted with Miller and Miller to pay 40% in the event of settlement after suit was filed, the Miller firm did not file the suit and does not appear to have come close to the stage of preparing to file suit. Adoption of 33⅝% as provided in Meche’s contract with the second attorney, John W. Johnson, seems quite fair and reasonable under the circumstances. We regard the matter as being within the sound discretion of the trial judge, and we find no justification for disturbing his ruling.
Our law strikes a balance between the protection of attorney’s rights under contingency fee contracts as laid down in LSA-R.S. 37:218 and protection of clients from the exaction of clearly excessive fees. See Code of Professional Responsibility, DR 2-106, in effect at the time of the confection of the Meche-Miller contract, and Saucier v. Hayes Dairy Products, Inc., 373 So.2d 102, 117 (La.1979). Although parties are permitted to contract with respect to attorney fees, such *347 fees are subject to review and control by the courts. Leenerts Farms, Inc. v. Rogers, 421 So.2d 216 (La.1982). Courts may inquire as to the reasonableness of attorney fees as part of their prevailing inherent authority to regulate the practice of law. State, D.O.T.D. v. Williamson, 597 So.2d 439 (La.1992).
For the reasons given above, we will not disturb the trial court’s ruling adopting the percentage of 33½% of recovery as proper in this case. Compare Palmer v. Goudchaux/Maison Blanche, Inc., 613 So.2d 704 (La.App. 5th Cir.), writ denied, 616 So.2d 698, 699 (La.1993) and Succession of Boyenga, 437 So.2d 260 (La.1983).
Allocation of 3% of the Attorney Fee to Plaintiff
The 3% of the Meches’ recovery awarded to Miller and Miller amounted to $4,230.41 together with legal interest from date of judicial demand as set forth in the formal judgment. As outlined above, the Miller firm asserts that it should be awarded 8½%. The film asserts that, rather than the 3% the court held it earned, it should be awarded the full amount which John W. Johnson waived. (33⅜% less 25% accepted by Johnson). This argument by appellant is non sequitur.
That Johnson chose to accept 25% as his fee, thus waiving anything above that to which he might have been entitled, was a matter between Johnson and the Meches. As worked out by the trial judge, Johnson actually waived 5⅝%. It is this 5½% which appellant contends it should have (in addition to the 3% awarded them). No logic sustains this argument. If appellant’s argument was logical and Johnson had for some reason accepted one-half of his fee (say 16¾%), then appellant could argue it was entitled to 16⅜% of the Meches’ recovery.
Perhaps a more fundamental reason for rejecting appellant’s argument on this phase of the case is that the trial judge fairly appraised the value of appellant’s services rendered to the Meches as a proportion of the 33½% contingency fee. From our review of the record, we cannot say the trial judge abused his discretion in fixing appellant’s share of the contingent fee (based on a total fee of 33⅜%) at 3% which amounts to $4,230.41. In its brief the Miller firm argues that the effect of the trial judge’s ruling was to compensate it on a quantum meruit basis. Saucier held that the amount prescribed in a contingency fee contract, not quantum meru-it, is the proper frame of reference for fixing compensation for an attorney prematurely discharged without cause. The trial judge’s written reasons, quoted in part above, clearly demonstrate that he followed Saucier. He followed Saucier precisely. He first selected a proper contingency fee percentage. Then he divided that fee by comparing the value of services contributed by Michael B. Miller and John W. Johnson. This is not payment on a quantum meruit basis.
DISPOSITION
For the reasons stated above, we affirm the trial court and assess the costs of this appeal to plaintiff-appellant, Miller and Miller.
AFFIRMED.