845 So.2d 591 (2003)
Maximillion HARVEY, et al.
v.
William COLE, Jr., et al.
No. 2002-CA-1704.
Court of Appeal of Louisiana, Fourth Circuit.
April 30, 2003.
Rehearing Denied May 30, 2003.
*593 Stephen D. Marx, Chehardy, Sherman, Ellis, Breslin, Murray & Recile, Metairie, LA, for Intervenor/Appellant.
Court composed of Judge JOAN BERNARD ARMSTRONG, Judge MAX N. TOBIAS, JR., and Judge LEON A. CANNIZZARO, JR.
MAX N. TOBIAS JR., Judge.
The appellant/intervenor, Consumer Capital, Inc., appeals from a judgment granting an exception of no right of action, which dismissed its intervention.[1] After a review of the record and the applicable law, we reverse the trial court and remand the matter for further proceedings.
This case began as a personal injury lawsuit with four plaintiffs, two of whom, Maximillion Harvey and Leroy Treadwell (hereinafter "the plaintiffs"), were represented by Evan Tolchinsky, a now disbarred lawyer.[2] Tolchinsky had a written retainer agreement with both of the plaintiffs. The legal representation was terminated upon Tolchinsky's disbarment and the plaintiffs were referred to Ivan David Warner, III for representation. Mr. Warner and Tolchinsky executed two written contracts whereby Mr. Warner agreed to give Tolchinsky 60% of the attorney's fees generated in each case.
Tolchinsky, while a practicing attorney, and Consumer Capital entered into a contractual arrangement under which Consumer Capital advanced money to or on behalf of Tolchinsky's clients to pay medical, litigation, and living expenses during the pendency of the lawsuits (hereinafter referred to as the "Loan Program"). Under the terms of the Loan Program, Consumer Capital is repaid out of the proceeds of any settlement or judgment that may result from the litigation. Further, Tolchinsky agreed that even if no settlement or judgment proceeds were obtained, he remained liable to Consumer Capital for repayment of the monies advanced to his clients. The Loan Agreement was executed on 31 July 1996.
In addition, Tolchinsky executed a continuing guaranty on 31 July 1996, wherein he personally guaranteed repayment of all indebtedness due to Consumer Capital by all of his clients. Tolchinsky also executed a security agreement, wherein he secured his personal guaranty to Consumer Capital by assigning to it any and all rights he had to attorney's fees, present and future. Finally, Tolchinsky executed a financing statement (hereinafter referred to as the "UCC-1"), which enabled Consumer Capital to perfect its security interest in his right to receive payment for professional services rendered by him. The UCC-1 was recorded by Consumer Capital with the Louisiana Secretary of State on 1 August 1996 and given the filing number XX-XXXXXXX, thereby perfecting Consumer Capital's security interest as to third parties.
During the course of the Loan Program, Consumer Capital advanced a significant *594 amount of money to Tolchinsky on behalf of his clients. Many of the loans were made to Tolchinsky's clients whose cases did not generate any money or sufficient funds to repay the loans. However, under the terms of the Loan Program and the continuing guaranty, Tolchinsky remained obligated to repay the money, but, despite amicable demand by Consumer Capital, did not. Consumer Capital has been unable to locate Tolchinsky and believes that he may be residing out of the country.
The plaintiffs ultimately prevailed in the captioned lawsuit and a contingency fee was generated; as the original attorney, Tolchinsky was entitled to some portion of the fee.[3] In order to recover his fee, Tolchinsky retained counsel, Robert G. Harvey, who filed an intervention on 8 March 2002 in the underlying suit to protect Tolchinsky's interests. Based on the documents executed by Tolchinsky as discussed above, Consumer Capital intervened on 17 August 2001.
In response to both interventions, the plaintiffs filed numerous exceptions, which were set for hearing on 4 April 2002. The trial court denied those relating to Tolchinsky's intervention and sustained the exception of no right of action relating to Consumer Capital's intervention. In the reasons for judgment, the trial court stated:
The issue of a Creditor intervening in litigation to collect a debt was addressed by the Fourth Circuit Court of Appeal in Lewis v. Kubena, 2000-2362 (La.App. 4 Cir. 10/24/01), 800 So.2d 68. In Lewis a finance company, Oceanside, Inc. provided attorneys with loans to finance litigation expenses including advances to the clients. Oceanside intervened in the Lewis matter for the repayment of the loans.
The Fourth Circuit affirmed the District Court's dismissal of Oceanside's intervention holding that Louisiana Code of Civil Procedure article 1091 requires that:
the right asserted by the intervenor must be so related or connected to the facts or object of the principal action that a judgment on the principal action will have a direct impact on the intervenor's rights.
Oceanside's loan agreement specifically stated that "if the case is lost the loan becomes due and payable immediately." That sentence establishes that Oceanside's claim of repayment would be unaffected by any judgment rendered in the case.
This Court finds the same set of circumstances surrounding the loan agreements Consumer Capital asserts gives them [sic] the right to intervene. Consumer Capital's rights are unaffected by the outcome of any judgment in the above captioned matter. Thus, Consumer Capital does not meet the requirements of Louisiana Code of Civil Procedure article 1091.[4]
After it granted the exception of no right of action, counsel for the plaintiffs and counsel for Tolchinsky allegedly met with the trial court in chambers and "tried" Tolchinsky's claim to a portion of the fee. Consumer Capital's attorney represented at oral argument that he was *595 excluded from the "trial," as reflected in the judgment of 4 April 2002.[5] A consent judgment in favor of Tolchinsky in the amount of $25,000.00 plus costs was rendered on 4 April 2002. Despite objections by Consumer Capital, counsel for Tolchinsky was permitted to withdraw the money from the registry of the court for immediate disbursement "without respect to appellate delays."[6]
Consumer Capital appeals the judgment, arguing that the trial court erred in granting the exception of no right of action and that the court's reliance on Lewis v. Kubena, 2000-2362 (La.App. 4 Cir. 10/24/01), 800 So.2d 68, is misplaced. It also contends that the trial court erred in allowing Tolchinsky to "resolve" his claim for attorney's fees as his claim had been assigned to Consumer Capital. Finally, Consumer Capital asserts that the trial court erred in permitting the parties to withdraw all the funds from the registry of the court, despite Consumer Capital's right to a suspensive appeal from the granting of the exception.
An action can only be brought by a person having a real and actual interest which he asserts. La. C.C.P. art. 681. The exception of no right of action is designed to test whether the plaintiff has a real and actual interest in the action. La. C.C.P. art. 927(5). The function of the exception of no right of action is to determine whether the plaintiff belongs to the class of persons to whom the law grants the cause of action asserted in the suit. Babineaux v. Pernie-Bailey Drilling Co., 261 La. 1080, 262 So.2d 328 (1972). The exception of no right of action assumes that the petition states a valid cause of action for some person and questions whether the plaintiff in the particular case has a legal interest in the subject matter of the litigation. Louisiana Paddlewheels v. Louisiana Riverboat Gaming Commission, 94-2015 (La.11/30/94), 646 So.2d 885.
In Foltmer v. James, XXXX-XXXX, p. 3 (La.App. 4 Cir. 9/12/01), 799 So.2d 545, 547, we stated:
In Babineaux v. Pernie-Bailey Drilling Co., 261 La. 1080, 262 So.2d 328 (La.1972), the Louisiana Supreme Court listed two possible questions that can be raised by an exception of no right of action: (1) "whether the plaintiff belongs to the particular class in whose exclusive favor the law extends the remedy," or (2) "whether plaintiff has the right to invoke a remedy which the law extends only conditionally." Id. at 1096, 262 So.2d 328, 262 So.2d at 333.
In the case at bar, Consumer Capital has a cause of action, which could only conditionally be asserted in this case.
The requirements of an intervention are set forth in La. C.C.P. art. 1091, which provides:
A third person having an interest therein may intervene in a pending action to enforce a right related to or connected with the object of the pending action against one or more of the parties thereto by:

*596 (1) Joining with plaintiff in demanding the same or similar relief against the defendant;
(2) Uniting with defendant in resisting the plaintiff's demand; or
(3) Opposing both plaintiff and defendant.
Consumer Capital argues that no prohibition exists against an attorney assigning his fee to a creditor as collateral. We agree. We have reviewed the documents on which Consumer Capital relies and find that it has a protected security interest in Tolchinsky's accounts, as defined in La. R.S. 10:9-102(a)(2).[7] However, this does not automatically give Consumer Capital the right to intervene in the underlying lawsuit to recover the money to which it argues it is entitled.
The right to intervene requires the existence of a justiciable cause between the parties that is related or connected to the facts of the principal demand where a judgment on the principal demand will have a direct impact on the intervenor's rights. In re Medical Review Panel Claim of Dunjee, 97-0451, 97-0452 (La. App. 4 Cir. 5/27/98), 715 So.2d 64.
The issue presented herein is similar to that recently addressed in Scott v. Metropolitan Life Insurance Co., XXXX-XXXX (La. App. 4 Cir. 12/5/01), 803 So.2d 1008, in which an attorney, Mr. Robichaux, filed a petition of intervention for breach of contract alleging that he was entitled to attorney's fees as a result of his contract with plaintiff's counsel to provide consulting and support services. The plaintiff's attorneys were named as defendants-in-intervention. The defendants-in-intervention filed various exceptions, including no right of action, which was denied by the trial court. In response, the defendants-in-intervention filed a supervisory writ with this court, which we granted, stating:
A review of the petition filed by Robichaux reveals that it fails to comply with the requirements of article 1091. Plaintiff in intervention did not join with either the plaintiffs or the defendants against the other. Nor did the plaintiff in intervention assert allegations against both the plaintiff and defendant. In fact, the plaintiff did not name the plaintiffs or defendants as defendants in intervention. The plaintiff in intervention named entirely new defendants in his petition. Plaintiff in intervention named as defendants the plaintiffs' present attorney, his law firm, and the members of his law firm alleging that plaintiff in intervention and plaintiffs' present attorney entered into a contract in which plaintiff in intervention was to provide consulting and support services for plaintiffs' attorney in the litigation filed in St. Bernard Parish.
Plaintiff in intervention contends that his petition is similar to liens filed by attorney pursuant to La. R.S. 37:218. That statute allows an attorney to assert a privilege to fees owed in a prior client's cause of action while the litigation is pending. However, plaintiff in intervention's argument is without merit, as plaintiff has not entered into a contract with the Scotts and the other original plaintiffs. Plaintiff in intervention has allegedly entered into a contract with another attorney to assist that attorney with his representation of the original plaintiffs. Plaintiff has not produced *597 any evidence in support of his argument that the Scott plaintiffs authorized Maples to hire and/or contract with Robichaux. Furthermore, Robichaux has not even produced a signed contract between himself and Maples. A contract, if it exists, concerns the parties to the contract, i.e., Robichaux and Maples, not the plaintiffs and the defendants named in the original asbestos litigation and does not depend upon the outcome of the original litigation.
Id. at pp. 4-5, 803 So.2d at 1010-11.
The same reasoning applies here. While Consumer Capital has produced a signed contract between it and Tolchinsky, that contract concerns only Consumer Capital and Tolchinsky, not the plaintiffs in the underlying personal injury action. Further, Consumer Capital has no direct interest related to or connected with the object of the pending action. Finally, as in Lewis v. Kubena, supra, because Consumer Capital's claim for repayment is unaffected by any judgment on the main demand, the "required connexity" to support the intervention has not been established. Id. at p. 6, 800 So.2d at 72.
As discussed in the concurrence in Lewis, Consumer Capital's cause of action is properly asserted in a separate suit against Tolchinsky and Warner, who is also a guarantor. In the alternative, Consumer Capital could have intervened and sought a writ of attachment to secure its interest in the attorney's fees. As set forth in La. C.C.P. art. 3541:
A writ of attachment may be obtained when the defendant:
(1) Has concealed himself to avoid service of citation;
(2) Has granted a security interest under Chapter 9 of the Louisiana Commercial Laws (R.S. 10:9-101, et seq.), or has mortgaged, assigned, or disposed of his property or some part thereof, or is about to do any of these acts, with intent to defraud his creditors or give an unfair preference to one or more of them;
(3) Has converted or is about to convert his property into money or evidences of debt, with intent to place it beyond the reach of his creditors;
(4) Has left the state permanently, or is about to do so before a judgment can be obtained and executed against him; or
(5) Is a nonresident who has no duly appointed agent for service of process within the state.[8]
A writ of attachment could not have been more clearly designed to fit Consumer Capital's claims, circumstances, and situation.[9] Here, Consumer Capital could *598 have attached Tolchinsky's interest in the plaintiffs' suit. Thus, the Code of Civil Procedure provides a procedural mechanism that specifically envisions the factual scenario under which Consumer Capital found itself. However, despite our holding that an intervention alone is not the proper procedural tool to accomplish the objective sought by Consumer Capital, we do find that the trial court committed reversible error.
Pursuant to La. C.C.P. art. 934:
When the grounds of the objection pleaded by the peremptory exception may be removed by amendment of the petition, the judgment sustaining the exception shall order such amendment within the delay allowed by the court. If the grounds of the objection cannot be so removed, or if plaintiff fails to comply with the order to amend, the action shall be dismissed. [Emphasis added.]
Justice and fairness require that permitting Consumer Capital to amend its intervention to include a request for a writ of attachment would have cured the defect that required the granting of the exception of no right of action. This statutory right to amend was not permitted by the trial court, thus constituting reversible error.
In addition, we do not approve of the court's subsequent acts on 4 April 2002. As reported by counsel for Consumer Capital at oral argument, immediately after the court overruled the objections to Tolchinsky's intervention and dismissed Consumer Capital's intervention, the trial court allegedly met in chambers with counsel for the plaintiffs, Mr. Warner and Steven J. Rando, and Tolchinsky's counsel, Mr. Harvey, to determine a "reasonable" attorney's fee due Tolchinsky. The panel inquired during oral argument why counsel for Consumer Capital was not in the meeting; the panel was told that although Consumer Capital's attorney requested to be present, such request was allegedly denied since Consumer Capital was no longer in the lawsuit. While this exchange was not on the record, the judgment on the merits of Tolchinsky's intervention lists only Messrs. Warner, Rando, and Harvey as present at the "trial." Although the trial court correctly determined that Consumer Capital could not intervene in the personal injury suit, the documents introduced by it into the record evidence that it has a security interest in the attorney's fee; its attorney should have been allowed to attend the "trial" because the judgment dismissing it from the suit was appealable and not final.
Even more egregious, however, was the trial court's order allowing all the money in the registry of the court to be withdrawn, in blatant violation of Consumer Capital's stated appellate rights. Under the Louisiana Code of Civil Procedure, Consumer Capital had the absolute right to take a suspensive appeal from the granting of the exception against it and post appropriate security to suspend the execution of the judgment. Although the issue is effectively moot, we find that the trial court violated Consumer Capital's rights in its actions.
For the reasons above, we reverse the judgment and remand the matter to the trial court so that Consumer Capital may amend its pleadings in accordance with this opinion, and proceed thereafter in accordance with law.[10] All costs of this appeal are assessed against the appellees.
REVERSED AND REMANDED.
ARMSTRONG, J., concurs in the result.
*599 ARMSTRONG, J., dissents.
On Application for Rehearing.
I respectfully dissent from the denial of the petition for rehearing. I would grant the rehearing to the limited extent of clarifying that both Mr. Tolchinsky and Consumer Capital, Inc. may intervene.
NOTES
[1] The appellees have filed no brief in this appeal.
[2] See In re Tolchinsky, 99-1742 (La.9/3/99), 740 So.2d 109.
[3] Following judgment, the money recovered on behalf of the plaintiffs was deposited into the registry of the court.
[4] The judgment also addressed some alleged forged documents that Consumer Capital relied upon to assert rights to Tolchinsky's attorney's fees for Leroy Treadwell and Consumer Capital's right to intervene for Ivan Warner's attorney's fees. However, these issues are not before this court in the instant appeal.
[5] Consumer Capital's counsel explained at oral argument that although he requested to be present at the "trial," he was denied attendance by the court since his client no longer had an interest in the disputed attorney's fees as a result of the trial court's granting of the exception on no right of action earlier that day.
[6] The Order of 4 April 2002, which permitted the counsel for the plaintiffs to withdraw $194,491.47 from the registry of the court, contains this precise language. We know of no authority as a matter of law that permits a trial court to insert such language in an order under the circumstances such as those presented in this case.
[7] Consumer Capital claims that the basis of the trial court's ruling is that it cannot share an attorney's fee because it is not a lawyer. That is not the reasoning given by the trial court as reflected in the record. In any event, we agree with Consumer Capital that its financial arrangement with Tolchinsky and other lawyers does not violate Rule 5.4 of the Rules of Professional Conduct.
[8] La. C.C.P. art. 3544 requires only a $250.00 bond to secure a writ of attachment on a nonresident.
[9] Our opinion should not be read as requiring Consumer Capital to secure a writ of attachment every time it intervenes in a lawsuit to assert its rights under an assignment of accounts receivable granted by an attorney. In the instant case, Tolchinksy himself intervened to assert the same rights he had assigned to his creditor; Consumer Capital claims that this is a unique situation, which has not previously happened. Due to Tolchinsky's intervention, Consumer Capital could no longer "stand in his shoes," but must attach its interest in those fees to prevent Tolchinsky from disposing of the property to which Consumer Capital is entitled. As Consumer Capital points out in its supplemental brief, most lawyers who have assigned their fees to it make no effort to protect their fee interests as they know that the debt to Consumer Capital far exceeds what they will recover. In those situations, Consumer Capital could intervene to protect, and subsequently, collect the fee interest, which is then applied to the debt. This opinion does not address those other cases.
[10] We recognize that all money was withdrawn from the registry of the court. However, the attorneys involved in the "trial" of the intervention are experienced practitioners who obviously were aware that Consumer Capital's appellate rights were being violated. We express no opinion as to their liability to Consumer Capital for their acts in this case, for that issue is not before the court.