865 So.2d 745 (2003)
Tanya HANKS, et al.
v.
COLUMBIA WOMEN'S AND CHILDREN'S HOSPITAL, et al.
No. 02-1394.
Court of Appeal of Louisiana, Third Circuit.
June 25, 2003.
J. Minos Simon, Lafayette, LA, for Plaintiff/Appellant, Tanya Hanks.
C. Scott Carter, New Orleans, LA, for Intervenor/Appellee, C. Scott Carter.
Court composed of SYLVIA R. COOKS, BILLIE COLOMBARO WOODARD, and BILLY HOWARD EZELL, Judges.
COOKS, Judge.
In January 1998, Tanya Hanks gave birth to a child, Nicholas. The child sustained permanently disabling injuries, including brain damage, allegedly as a result of medical malpractice. On September 9, 1998, Hanks engaged J. Minos Simon as counsel to pursue a malpractice claim. On May 18, 1999, Simon retained C. Scott Carter to assist in handling the claim. There is a signed agreement in the record *746 establishing the division of attorney fees between Carter and Simon. The record does not contain an agreement or amendment of the original agreement signed by the client acknowledging her intent to retain the services of Carter or assenting to the fee splitting arrangement existing between Simon and Carter.
A medical review panel rendered an opinion declaring Women's & Children's Hospital was at fault in causing injuries to Hanks' minor child. Women's & Children's Hospital agreed to a partial settlement of Hanks' claim by paying its maximum liability limit of $100,000.00. A check in the amount of $100,000.00 was tendered and made payable to Tanya Hanks, J. Minos Simon and C. Scott Carter. Carter sent the check to Simon, requesting that Simon endorse the check and return it to his office. Carter indicated he would deposit the check in his trust account on behalf of Tanya Hanks. Simon refused to sign the check. Instead, Simon forwarded the check to Carter's office, and requested Carter endorse the check and return it to him. Carter eventually endorsed the check and returned it to Simon's office. According to Simon, during the exchange "Carter in a telephone conversation with Tanya Hanks, fraudulently informed Tanya Hanks that [Simon] was illegally and improperly withholding delivery of those funds to her, by insisting on processing her funds through [Simon's] trust account." Hanks then confronted Simon concerning Carter's representations to her.
On June 25, 2001, Carter received a letter from Simon advising him that Hanks was terminating his involvement as counsel of record. Simon obtained an ex parte dismissal of Carter as counsel of record on July 19, 2001. In order to protect his future right to attorney fees, Carter filed a Petition of Intervention on August 20, 2001. On August 23, 2001, the trial judge signed an order allowing the intervention.
Hanks filed exceptions of no cause of action, no right of action and prematurity to the petition of intervention. The trial court denied the exceptions on November 12, 2001. This court denied writs ruling as follows:
There is no error in the trial court's ruling of November 12, 2001 disposing of Plaintiff's exceptions to the intervention of C. Scott Carter. Writ not considered as to applicant J. Minos Simon, Ltd. The judgment of November 12, 2001, signed November 28, 2001 does not include a ruling on applicant's exceptions.
The Louisiana Supreme Court also denied writs on May 10, 2002.
On May 28, 2002, Simon personally and on behalf of his law corporation filed exceptions of no right of action, no cause of action and prematurity challenging Carter's petition of intervention. After a hearing, the trial court granted the exceptions, finding Simon and his law corporation were not parties to the litigation and the intervention by Carter was not proper. However, the court ordered that any future disbursement made in payment of Hanks' claim include Carter's name on the check. Hanks filed for writs with this court, challenging this portion of the judgment. This court denied writs, holding:
We find no error in the trial court's ruling. The request for an award of sanctions is denied. Costs as to all matters are to await assessment by the trial court upon appropriate presentation.
Hanks filed this appeal, again attacking the judgment, arguing the trial court erred in considering "an ex parte oral request from an intervenor party to a pending litigation whereby the district court by a formal interlocutory order grants to the intervenor the equivalence of a privilege on funds due to plaintiff, where no such *747 privilege is granted by law, and where such order was granted without notice to plaintiff and without any hearing whatsoever."

ANALYSIS
At the outset, we turn to address Carter's contention that a panel of this court has previously ruled on the matter now before us. A panel of this court voted to deny writs. Generally, review of an issue previously addressed by this court would be precluded by the law of the case doctrine. Barnett v. Jabusch, 94-819 (La. App. 3 Cir. 2/1/95), 649 So.2d 1158. The doctrine applies to all decisions of an appellate court and not merely those arising from the full appeal process. Hawthorne v. Hawthorne, 96-89 (La.App. 3 Cir. 5/22/96), 676 So.2d 619, writ denied, 96-1650 (La.10/25/96), 681 So.2d 365. However, the doctrine is not an absolute bar to reconsideration; rather it is discretionary. Ducote v. City of Alexandria, 97-947 (La. App. 3 Cir. 2/4/98), 706 So.2d 673, writs denied, 98-1061 & 98-1070 (La.5/29/98), 720 So.2d 671. Courts should apply the doctrine only when there is no obvious injustice or manifest error. Id; Martin v. Provencher, 97-1648 (La.App. 3 Cir. 5/6/98); 718 So.2d 975. Because we find manifest error in our prior decision, we decline to accept as final our writ denial in Hanks.
Although there is no contract between Hanks and Carter in the record, Carter alleges Hanks was fully aware of his hiring. Carter represented Hanks for approximately two years, achieving a successful result with the Medical Review Panel. Carter was paid all attorney fees and expenses due him by virtue of his fee splitting arrangement up to the time he was terminated by Hanks. Carter filed a petition of intervention to protect his right to future attorney fees.
La.R.S. 37:218 allows an attorney to secure an interest in his client's claim. It provides as follows:
A. By written contract signed by his client, an attorney at law may acquire as his fee an interest in the subject matter of a suit, proposed suit, or claim in the assertion, prosecution, or defense of which he is employed, whether the claim or suit be for money or for property. Such interest shall be a special privilege to take rank as a first privilege thereon, superior to all other privileges and security interests under Chapter 9 of the Louisiana Commercial laws. In such contract, it may be stipulated that neither the attorney nor the client may, without the written consent of the other, settle, compromise, release, discontinue, or otherwise dispose of the suit or claim. Either party to the contract may, at any time, file and record it with the clerk of court in the parish in which the suit is pending or is to be brought or with the clerk of court in the parish of the client's domicile. After such filing, any settlement, compromise, discontinuance, or other disposition made of the suit or claim by either the attorney or the client, without the written consent of the other, is null and void and the suit or claim shall be proceeded with as if no such settlement, compromise, discontinuance, or other disposition has been made.
B. The term "fee", as used in this Section, means the agreed upon fee, whether fixed or contingent, and any and all other amounts advanced by the attorney to or on behalf of the client, as permitted by the Rules of Professional Conduct of the Louisiana State Bar Association.
Although the statute provides the attorney an interest in his client's claim, the Louisiana Supreme Court in Saucier v. Hayes *748 Dairy Products, Inc., 373 So.2d 102, 117 (La.1978) (on rehearing), held "the nature of that interest is not established by the provisions of the statute." The Saucier court elaborated further:
Because the Disciplinary Rules prohibit the acquisition of an absolute ownership interest in the client's claim prior to his performance of all or substantially all the legal services, the "interest in the subject matter of the suit, proposed suit or claim" safeguarded by the statute is, we believe, no more than a privilege granted to aid the attorney's collection of a fully earned fee out of the fund which the satisfaction of the client's claim yields.
Id., at 117. (Emphasis added)
The supreme court in Scott v. Kemper Ins. Co., 377 So.2d 66 (La.1979) expounding upon its holding in Saucier, discussed in detail the intervenor-attorney's rights with respect to his fee. The Court stated:
We have already said that R.S. 37:218 affords the attorney a privilege on the proceeds of the settlement for payment of the fee which he has earned (Saucier v. Hayes, supra), and that where the settlement funds have not been disbursed, that privilege attaches in preference to the right of the client's seizing creditor, even where the contract is not recorded. Calk v. Highland, [376 So.2d 495 (La.1979)]. See also R.S. 9:5001 for similar treatment of the proceeds from judgments and Roberts v. Hanover Insurance Co., 338 So.2d 158 (La.App. 2nd Cir.1976).
Beyond this however, may the attorney prevent settlement funds from being disbursed to his prejudice[?]
As we said in Calk, the legislative intent in passing R.S. 37:218 was to afford the contingency fee attorney comparable rights relative to settlements which he has relative to judgments and their proceeds. R.S. 9:5001. And while, for reasons above stated, we can not constitutionally apply R.S. 37:218's concluding sentence literally, we can apply it so as to effect its purpose within permissible bounds.
The obvious intent of R.S. 37:218 is to prevent a client's discharging an attorney and thereby depriving the attorney of his earned fee. Therefore, if the attorney with a written contingency fee contract bearing the no consent stipulation "file(s) and records it with the clerk of court in the parish in which the suit is pending ...", then a defendant who disburses the settlement proceeds without ascertaining and paying the fee to which the attorney is due, will do so to his prejudice. The extinguishing effect of the settlement will therefore be suspended, as the Court of Appeal determined in this case, until recognition and payment of the fee to which the attorney is entitled, determined in accordance with the principles established in Saucier.

Unlike the situation in Calk, where recordation of the contingency fee contract is irrelevant in a contest between an attorney and the client's creditor, imposition of an obligation upon the client's obligor in the suit to retain settlement funds until determination of fee entitlement, is dependent upon the attorney's full compliance with R.S. 37:218, including the recordation of the contract as stipulated therein.
It is therefore proper to remand the case to the trial court, as did the Court of Appeal, to allow the intervenor to prove the amount of the fee to which he is entitled. However, that proof should be made in accordance with our opinion in Saucier v. Hayes, supra, and not simply on a quantum meruit basis. Saucier *749 directed a method of calculation whereby the trial judge would determine first what was the highest of the contingency fee percentages contracted for by the client, and he would then divide that fee appropriately among the attorneys. Saucier stated "This solution envisions apportionment of only the highest agreed upon contingent fee in accordance with factors set forth in the Code of Professional Responsibility. Thus the fee is to be apportioned according to the respective services and contributions of the attorneys for work performed and other relevant factors."
Therefore, although the discharged attorney with a recorded contingent fee contract may not nullify his client's later settlement or proceed with the litigation as though no settlement had been made, he is entitled to the substantial protection for his earned fee as outlined above.
The jurisprudence in Louisiana is clear that only one contingent fee will be paid by the client, the amount to be determined according to the "highest ethical contingency percentage" contractually agreed to in the contract signed with the attorney. Saucier, 373 So.2d at 118. Saucier provides the fee is to be allocated to the various attorneys involved in the case based on the amount each has earned under the factors set forth in Rule 1.5 of the Rules of Professional Conduct (formerly the Code of Professional Responsibility).
The present case differs from the facts presented in Saucier and Scott where there was an executed contingency fee agreement between the client and first attorney, followed by the first attorney being discharged. A second contingency fee agreement was then entered into with a second attorney. Here there was no written contract executed between Carter and Hanks, but simply a contract between Simon and Carter, which provided for a division of fees between the two attorneys.
Saucier and Calk v. Highland Const. & Mfg., 376 So.2d 495, 499 (La.1979), clearly provide that "R.S. 37:218 gives the attorney who has a written contract affording him an `interest' in the claim a privilege to the extent of his earned fee on any recovery obtained by settlement." As mentioned, the record does not indicate there was any recorded nor signed contract between Carter and Hanks. As stated in Scott, the "imposition of an obligation upon the client's obligor in the suit to retain settlement funds until determination of fee entitlement, is dependent upon the attorney's full compliance with R.S. 37:218, including the recordation of the contract as stipulated therein." Therefore, in the absence of any recorded contract between Hanks and Carter, the trial court erred in ordering the obligor to include Carter's name on any check disbursed in payment of Hanks' claim.[1]See also Harvey v. Cole, *750 02-1704 (La.App. 4 Cir. 4/30/03), 845 So.2d 591.

DECREE
For the foregoing reasons, we reverse the trial court's judgment ordering that any disbursement made in payment of Tanya Hanks' claim include C. Scott Carter's name on the check and require his authority before negotiation. All costs of this appeal are assessed to C. Scott Carter.
REVERSED.
WOODARD, J., concurs in the result.
NOTES
[1] We note in passing, the Louisiana Supreme Court has recognized "where an attorney retained in a case employs or procures the employment of another to assist him, as regards the division of fee, the agreement constitutes a joint venture or special partnership." McCann v. Todd, 203 La. 631, 14 So.2d 469, 472 (1943) [quoting 7 C.J.S. Attorney and Client p. 1038 § 174]. The first circuit in Scurto v. Siegrist, 598 So.2d 507 (La.App. 1 Cir.), writ denied, 600 So.2d 683 (La.1992), discussed agreements to share contingency fees between attorneys, holding:

In the situation where a retained attorney associates, employs or procures the employment of another attorney to assist him in handling a case involving a contingency fee, the agreement regarding division of the fee is a joint venture which gives the parties to the contract the right to participate in the fund resulting from the payment of the fee by the client. Thus, the suit by an attorney to recover pursuant to that agreement is a suit to recover for breach of the agreement to share in the fund resulting from payment of the fee. It is not a suit for recovery of attorney's fees. Duer & Taylor v. Blanchard, Walker, O'Quin & Roberts, 354 So.2d 192 (La.1978). When the attorneys in a Duer situation have entered into an agreement regarding the division of the fee the Code of Professional Responsibility (or Rules of Professional Conduct) does not prohibit enforcement of that agreement and does not require apportioning of the fee on a quantum meruit basis.... See Lloyd v. Tritico, 527 So.2d 57 (La.App. 3d Cir.), writ denied, 528 So.2d 154 (La.1988); Defrancesch v. Hardin, 510 So.2d 42 (La.App. 1st Cir.), writ denied, 513 So.2d 819 (La.1987).