STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

04-97

GREGORY DEREYNA, III

VERSUS

PENNZOIL EXPLORATION, ET AL.

**********

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF VERMILION, NO. 72417
HONORABLE JOHN D. TRAHAN, DISTRICT JUDGE

**********

JOHN B. SCOFIELD
JUDGE

**********

Court composed of Jimmie C. Peters, Michael G. Sullivan, and John B. Scofield, Judges.

AFFIRMED.

Frank Marion Buck, Jr.
810 Union Street, Ste 350
New Orleans, LA 70117
Counsel for Intervenor-Appellant
        Frank M. Buck, Jr.

Lawrence N. Curtis
P. O. Box 80247
Lafayette, LA 70598-0247
Counsel for Plaintiff-Appellee
        Gregory deReyna, III

Robert Lynn Manard III
1100 Poydras St., Ste. 2610
New Orleans, LA 70163
Counsel for Intervenor-Appellee
        Robert Lynn Manard, III

SCOFIELD, Judge[*].

The Intervenor, Frank M. Buck, Jr., appeals the judgment of the trial court granting an exception of no right of action filed by the Plaintiff, Gregory deReyna, III, in this matter arising out of a fee dispute.[1]  For the reasons set forth hereinafter, we affirm.

**FACTS**[2]

The participants in this dispute are the Plaintiff, Mr. Gregory deReyna, III; Mr. Frank Buck, Jr., a New Orleans attorney; Mr. Robert L. Manard, III,  a New Orleans attorney, and his professional corporation, Robert L. Manard, III, a Professional Law Corporation (hereinafter referred to simply as "Manard"); and Mr. Lawrence N. Curtis, a Lafayette attorney, and his professional corporation, Lawrence N. Curtis, Ltd. (hereinafter referred to simply as "Curtis").

Buck began a working relationship with Manard in 1990, which continued for approximately twelve years.  During this period, Buck was paid a percentage of the fees earned in the cases handled by Buck, the percentage varying from time to time and from case to case.   Manard paid all of the expenses and overhead pertaining to this arrangement.  Buck and Manard never entered into a written agreement and at best, only had a loose verbal understanding of their relationship.

In September of 1998, the Plaintiff signed a written contingency contract with Robert L. Manard, III, a Professional Law Corporation.   Manard assigned the Plaintiff's case to Buck who did most, if not all, of the work in preparing and trying

---

[*]     John B. Scofield, participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.

[1]     While the preamble in the court's formal judgment granting the exception states that the matter is before the court on an exception of no right of action, the dispositive portion of the judgment grants "the Peremptive Exception of Prescription," an apparent typographical error. Under the provisions of La.Code Civ.P. art. 2132, the parties have corrected this error by stipulation.

[2]     This matter comes to this court on the trial court's granting of an Exception of No Right of Action.  The record contains no testimony.  Accordingly, the facts recited herein have been gleaned from the pleadings, briefs, memoranda and documents filed therewith, none of which has been subjected to the test of cross examination.  Nevertheless, the facts essential to the disposition of this case do not appear to be in dispute.

the Plaintiff's case. The trial itself began in August of 2000 and a jury rendered a verdict against the Plaintiff. However, in February 2002, Buck was successful in obtaining a new trial.

At about the same time as the new trial was granted, the relationship between Buck and Manard had soured to the extent that they ended their arrangement. The controversy between the two lawyers over the disposition of pending files intensified, leading to their dispute being litigated in the Civil District Court in New Orleans.

On April 17, 2002, Manard wrote a letter to the Plaintiff advising that Buck had left Manard's office and further advised that Manard and Buck had agreed to divide any fee attributable to the Plaintiff's case, 60% to Manard and 40% to Buck. The Plaintiff signed this letter and added in what purports to be his own handwriting, "I consider Frank Buck to be my layer [sic]."

Meanwhile, the rancor between Manard and Buck continued to escalate. In the New Orleans lawsuit, Manard either effected or attempted to effect a seizure of all incoming fees of Buck. In September of 2002, Buck advised the Plaintiff that Buck could not provide the needed financing of the Plaintiff's case and that the Plaintiff should engage the services of another lawyer to take the case forward. Buck recommended Curtis to the Plaintiff and even facilitated the transfer of the file to Curtis.[3]

Within a relatively short period of time after taking over the representation of the Plaintiff, Curtis entered into a mediation of the case resulting in the case being settled for the sum of $450,000.00.

On September 23, 2002, Manard intervened to recover fees and costs claimed to be due him in accordance with the contingency fee contract between Manard and the Plaintiff dated September 10, 1998. On July 7, 2003, Buck intervened alleging,

---

[3]    Although the agreement between Curtis and the Plaintiff is not at issue in this lawsuit, there is nothing in the record to indicate just what the agreement between Curtis and the Plaintiff might be. Interestingly, there was no written agreement between Buck and Curtis relating to a fee arrangement after Curtis took over the case.

*inter alia*, that the Plaintiff had employed Buck to be his attorney and that Buck was entitled to a percentage of the fee. Buck has not stated in his pleadings or in his briefs just what that percentage should be. After thorough briefing by all parties, followed by oral arguments, the trial court granted the Plaintiff's exception of no right of action on August 29, 2003. On October 1, 2003, the trial court granted Buck's motion for a suspensive appeal to this court.

DISCUSSION

This court has recently expressed the appropriate standard of review for an exception of no right of action:

> An exception of no right of action has the function of determining whether the plaintiff has any interest in the judicially enforced right asserted. The function of this exception is to terminate the suit brought by one who has no judicial right to enforce the right asserted in the lawsuit. The determination of whether a plaintiff has a right of action is a question of law. Accordingly, we review exceptions of no right of action *de novo*.

*Mississippi Land Co. v. S & A Properties II, Inc.*, 01-1623, pp. 2-3 (La.App. 3 Cir. 5/8/02), 817 So.2d 1200, 1202-03 (citations omitted).

*St. Martin v. Willard*, 03-204, pp. 4-5 (La.App. 3 Cir. 6/25/03), 848 So.2d 773, 776, *writ denied*, 03-2058 (La. 11/14/03),858 So2d 426.

Accordingly, this court must consider, *de novo*, whether Buck has a judicial right to intervene for his fee in deReyna's suit against Pennzoil.

There seems to be no question that Buck performed considerable work for the Plaintiff, including handling most, if not all, of the pre-trial discovery and motions, as well as conducting the unsuccessful five day jury trial and thereafter, the successful motion for a new trial. However, during this entire time, Buck performed this work for the Plaintiff under the aegis of the contingency fee contract dated September 10, 1998 signed by the Plaintiff and Manard. There is nothing in the record indicating that Buck ever had a contract directly with the Plaintiff. The closest thing to a written agreement between Buck and the Plaintiff is the letter from Manard to the Plaintiff

dated April 17, 2002.[4]  Even though Buck did not sign this letter, it might arguably have established some privity of contract between him and the Plaintiff, *e.g.*, a stipulation pour autrui.  However, any such an argument has become moot.  In Buck's August 13, 2003 memorandum to the trial court in opposition to the Plaintiff's exception of no right of action, Buck addresses the intensification of the bitterness between Buck and Manard and Manard's attempt to freeze Buck's income, saying "When he [Buck] became aware of this attempt to freeze all of Buck's income, Buck decided to terminate agreements that Buck and Manard had reached in the Gregory deReyna and Gregory Prince files."  In that same memorandum, Buck also states: "The Buck v. Manard litigation continued and a significant settlement agreement was reached between the parties and signed by them on Monday, July 14, 2003.  In that agreement, both sides agreed they had 'no agreement' with respect to the deReyna file.  Instead, they both agreed they were reserving all rights and remedies available to them."  Accordingly, by Buck's own admission, any rights he may have acquired

_____

[4]  The basic letter from Manard to Plaintiff dated April 17, 2002, reads:

Dear Greg:

As you may know, Frank Buck has left my office to start his own practice. However, he and I have agreed to continue working on your case together.  The agreement is that I will pay for costs and be available for consultation and he will do the leg work to finish out the case, including trying it and handling the appeal.

Our fee is split 60% to Manard; 40% to Buck with me paying the costs.  If this meets with your approval, please sign the bottom of this letter and send it back to me in the enclosed self-addressed  and stamped envelope.

Cordially,

/s/ Robert L. Manard

Robert L. Manard

In signing this letter, Plaintiff adds the following, presumably in Plaintiff's own handwriting:

I consider Frank Buck to be my layer [sic].  I'm ok with any agement [sic] between Manard and Buck, as long as Frank Buck is my layer [sic].

/s/Gregory deReyna, III
Gregory deReyna, III

by virtue of the April 17, 2002 letter between Manard and the Plaintiff have been terminated.

The law of Louisiana mandates that a lawyer's contingency fee contract with a client must be in writing. Rule 1.5 (c ) of the Rules of Professional Conduct states in pertinent part "A contingent fee agreement shall be in writing and shall state the method by which the fee is to be determined . . . ."[5] The rules of Professional Conduct are rules issued and published by the Supreme Court of Louisiana. As such, these rules are recognized as having the force and effect of substantive law. *Walker v. State, Dept. of Transp. and Development*, 01-2078 (La. 5/14/02), 817 So.2d 57; *Keene v. Reggie*, 96-740 (La.App. 3 Cir. 10/22/97), 701 So.2d 720.

Moreover, in La.R.S. 37:218, the legislature has devised a method whereby an attorney may secure an interest in his client's claim. The statute provides that an attorney may preserve an interest in his client's case by entering into a "written contract signed by his client." The act further provides that once this written contract is filed for record in the office of the Clerk of Court in the Parish of the client's domicile, the suit or claim cannot be disposed of without the lawyer's written consent. It is obvious that the lynchpin of this statutory method of protecting a lawyer's interest in his fee is that the contract between the lawyer and the client be in writing. T h i s court addressed the requisites of La.R.S. 37:218[6] in the case of *Hanks v.*

---

[5] Not only does Buck have no written contract with the Plaintiff, there is nothing in the record indicating what contingency percentage Buck is claiming, much less "the method by which the fee is to be determined."

[6] La.R.S. 37:218 provides that:

A. By written contract signed by his client, an attorney at law may acquire as his fee an interest in the subject matter of a suit, proposed suit, or claim in the assertion, prosecution, or defense of which he is employed, whether the claim or suit be for money or for property. Such interest shall be a special privilege to take rank as a first privilege thereon, superior to all other privileges and security interests under Chapter 9 of the Louisiana Commercial laws. In such contract, it may be stipulated that neither the attorney nor the client may, without the written consent of the other, settle, compromise, release, discontinue, or otherwise dispose of the suit or claim. Either party to the contract may, at any time, file and record it with the clerk of court in the parish in which the suit is pending or is to be brought or with the clerk of court in the parish of the client's domicile. After such filing, any settlement, compromise, discontinuance, or other disposition made of the suit or claim by either

*Columbia Women's and Children's Hosp.*, 02-1394 (La.App. 3 Cir. 6/25/03), 865 So.2d 745, a case which is factually similar to the case at issue here. In *Hanks*, the plaintiff had a contingency fee contract with attorney J. Minos Simon to handle a medical malpractice claim. Mr. Simon engaged attorney C. Scott Carter to assist Simon in prosecuting the case. Simon and Carter entered into a fee splitting agreement but Carter had no contract directly with Hanks. Carter did considerable work on the Hanks case for which he was paid pursuant to his fee splitting agreement. Eventually, however, Carter was discharged from the case and he promptly filed a petition of intervention to protect his alleged right to future attorney's fees. The trial court ordered that any future disbursements on Ms. Hanks' claim include Carter's name on the check. This court reversed the trial court holding, in effect, that because Carter had no written contract with Hanks, Carter had no right to share in the contingency fee.

It is undisputed that any fee payable by the Plaintiff was to be on a contingency basis. That contingency was met upon the settlement of the case for $450,000.00. For Buck to share in this contingency fee, the law mandates that there be a written contract between Buck and the Plaintiff. There was none.

It is not for this court to decide in these proceedings if Buck may have a cause of action in, say, quantum merit or unjust enrichment against Manard, or perhaps even Curtis. Buck only lays claim to a percentage of the Plaintiff's contingency fee. He

_____

the attorney or the client, without the written consent of the other, is null and void and the suit or claim shall be proceeded with as if no such settlement, compromise, discontinuance, or other disposition has been made.

B. The term "fee", as used in this Section, means the agreed upon fee, whether fixed or contingent, and any and all other amounts advanced by the attorney to or on behalf of the client, as permitted by the Rules of Professional Conduct of the Louisiana State Bar Association.

has not pled nor has he argued any other theory of recovery against the Plaintiff or anyone else.  Buck has no right of action in the Plaintiff's lawsuit.  The Plaintiff's settlement should not be held hostage to a dispute Buck may have with Manard or Curtis.

For these reasons, the judgment of the trial court is affirmed.  Costs of this appeal are assessed to the Appellant.

**AFFIRMED.**