It CARAWAY, J.,
dissenting.
I respectfully dissent.
This case bears out the adage, hard facts make bad law. Certainly, there are hard facts evident from what appears to have been very good legal representation from Mr. Culpepper who has gone uncompensated for his services. Providing him compensation in a manner given by the majority, however, makes for bad law. This is bad law for the attorney/client relationship within contingent fee contracts and misconstrues the nature of such contracts and the rights of the attorney under the contract, thus missing well-established concerns for the regulation of the practice of law.
There are two glaring facts that somehow got lost in the lengthy reasoning of the majority. First, the ultimate “outcome of the matter” between Mr. Cole and his mother’s estate has yielded him nothing. See In re Succession of Brown, 39,035 (La.App.2d Cir.10/27/04), 886 So.2d 633 (where Mr. Cole represented himself pro se and lost after Mr. Culpepper’s withdrawal). ■ One-third times Mr. Cole’s *348 award or “outcome of the matter” is how the fee is mathematically calculated. The contingent part of the equation is the “outcome of the matter,” and it never materialized in Mr. Cole’s favor in this case. One-third times zero equals no contingency fee.
This is the clear precedent of the ruling in Frederic Hayes, Inc. v. Rollins, 435 So.2d 1151 (La.App. 3d Cir.1983). There, the client rejected a $30,000 settlement offer and received nothing. When the attorney sued for his one-third contingency fee equaling $10,000, the court said no such |¡,fee could be awarded because the contingency of a positive outcome to the client produced no award.
More importantly, the Louisiana Supreme Court and the lower courts have an inherent judicial power concerning the regulation of the practice of law which entails “the responsibility to exert control by adjudicatory means of individual cases as they arise, including those relative to discharge of counsel and regulation of fees, whether by contingency contract or otherwise.” O’Rourke v. Cairns, 95-3054 (La.11/25/96), 683 So.2d 697, 700; Saucier v. Hayes Dairy Products, Inc., 373 So.2d 102 (La.1979). From the rules of professional conduct and the decisions of our supreme court, it is clear that an attorney with a contingency fee contract is never vested with an ownership or proprietary interest in the cause of action or subject matter of the litigation. Rules of Professional Conduct, Rule 1.8(i); Saucier, supra; Scott v. Kemper Ins. Co., 377 So.2d 66 (La.1979). To avoid offending the disciplinary rules regarding discharge of counsel (Rule 1.16) and the client’s direction of the representation and settlement (Rule 1.2a), the court in Saucier limited the contingency fee interest of the attorney to “no more than a privilege granted to aid the attorney’s collection of a fully-earned fee out of the fund which the satisfaction of the client’s claim yields.” Id. at 117 (emphasis supplied). Louisiana privileges attach primarily to a specific thing or fund. La. C.C. art. 3189; Republic Supply Co. v. Carthay Land Co., 244 So.2d 241 (La.App. 4th Cir.1971). There is nothing for Mr. Culpepper’s privilege to attach to in this ease because Mr. Cole never recovered an award or fund for the satisfaction of his claim [¡¡against his mother’s estate. To allow the attorney an ownership interest in a settlement rejected by the client, and to then translate that ownership interest into a personal money judgment against the client who recovered nothing, ignores multiple and serious concerns embodied in the rules of professional conduct.
Second, Mr. Culpepper’s lengthy letter of September 20, 2000, provides a commendable discussion and assessment of the claim to his client, and it certainly gives a written basis for the parties’ agreement for a one-third contingency fee contract as found by the majority. Yet, the discussion of the difficult legal matters of forced heir-ship and succession law and Mr. Culpep-per’s assessment of the values of the estate and the estimated $22,900 maximum recovery leave much room for the lay person to be confused or to disagree. Recognizing this and properly following Rule 1.2(a), Mr. Culpepper concluded the letter by conceding to Mr. Cole, “[w]e need to think about all this and see what you would be willing to do.” Clearly, Mr. Cole was never willing to settle for the $21,600.03 offer which Mr. Culpepper skillfully obtained. Therefore, the majority is mistaken in relying on Mr. Culpepper’s stated belief that he was authorized to work out the best settlement possible. Honoring the rules of professional conduct, Mr. Culpepper, appropriately, never felt comfortable in signing a settlement release for his client and cashing the $21,600.03 settlement check. If he had clear and express unilateral authority from his client to settle for $21,600.03, this *349 suit to collect his fees would never have occurred.
| ¿The hard fact of this case, as indicated above, is that Mr. Culpepper may very well have obtained a more valuable settlement proposal than any outcome Mr. Cole could ever have received after a court’s judgment. Mr. Cole appears imprudent for rejecting the settlement. He certainly has not exhibited even an elementary understanding of the complicated nature of his claims. But these things sometimes occur in an attorney/client relationship, and the disappointing risk of a client who dooms any possibility for a positive outcome for the matter is one of the reasons why this is called a contingency fee relationship. As the court concluded in Hayes, supra, other remedies may be available to compensate the attorney for his actual services, and I would remand to allow consideration of another theory of recovery for Mr. Culpepper.
Finally, as indicated above, the law of this case will now be applicable to any contingency fee contract, and the appearance of impropriety to the public will be significant. For example, an attorney might advise a client in a similar assessment/contingency fee letter that the expected range of recovery of his personal injury claim is between $10,000 and $50,000. The attorney could strongly recommend in the letter that any settlement offer of $30,000 be accepted immediately, yet conclude to the client that he needs “to think about all this and see what you would be willing to do.” Immediately after filing such a personal injury suit, if a $30,000 settlement is offered, the attorney may, under this ruling, withdraw from representation and obtain a personal judgment against the client for a one-third fee or $10,000, for the client’s refusal to settle. Thereafter, when [Rthe client proceeds to trial and receives a verdict granting a low award of $10,000 in damages, the client must use that entire award to pay his former attorney. This problem picture can be further exacerbated if we assume that the hypothetical attorney expended only $1,000 worth of fees measured on an hourly basis before he decided to withdraw from the case. This is the broad implication of the majority’s ruling. It violates the regulation of the practice of law for the contingency fee relationship as addressed in Saucier, and I respectfully dissent.
APPLICATION FOR REHEARING
Before BROWN, C.J., and WILLIAMS, CARAWAY, PEATROSS, and MOORE, JJ.
Rehearing denied.
BROWN, C.J., and CARAWAY, J., would grant rehearing.