NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

CA 09-263


EARL WARE

VERSUS

TROY M. VAUGHN, ET AL.


**********

APPEAL FROM THE
NINTH JUDICIAL DISTRICT COURT
PARISH OF RAPIDES, NO. 202,716
HONORABLE DONALD THADDEUS JOHNSON, DISTRICT JUDGE

**********

SHANNON J. GREMILLION
JUDGE

**********

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Marc T. Amy, and Shannon J. Gremillion, Judges.

AFFIRMED.


Charles Henry Munsterman
Attorney at Law
3600 Jackson St., Suite 105
Alexandria, LA 71303
(318) 487-4972
Counsel for Appellee:
Todd A. Townsley
Marcus P. LaCombe

**Eugene A. Ledet, Jr.**
**Rivers, Beck, Dalrymple, & Ledet**
**P. O. Drawer 12850**
**Alexandria, LA 71315-2850**
**(318) 445-6581**
**Counsel for Intervenor Appellant:**
**Craig S. Watson**

**GREMILLION, Judge.**

The intervenor, attorney Craig S. Watson, appeals the trial court's award of $30,000 for legal fees incurred in the representation of Earl Ware against Dr. Troy M. Vaughn in a medical malpractice action. For the following reasons, we affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

This appeal arises out of a fee dispute following Ware's termination of Watson and the settlement of his medical malpractice action by Marcus LaCombe of the Townsley Law Firm in Lake Charles, Louisiana. The underlying facts surrounding the medical malpractice are not an issue in this appeal.

In January 2001, Watson filed a petition for damages on behalf of Ware. Dr. Vaughn filed a motion for summary judgment in September 2001. Shortly thereafter, in October 2001, Dr. Vaughn filed a motion to continue hearing on motion for summary judgment without date noting that he had been "contacted by opposing counsel, Mr. Craig Watson, who requested additional time to conduct further discovery prior to the hearing on the Motion for Summary Judgment." That motion was granted.

In July 2004, the defendants filed a motion to set scheduling conference urging that "an adequate amount of time has elapsed for the completion of adequate discovery, and the matter is in a posture to be set for trial on the merits." The defendants filed an identical motion in February 2005.

In October 2005, Watson filed a motion for continuance urging that the trial scheduled to commence on January 10, 2006, be continued due to disruptions caused by Hurricanes Katrina and Rita.

In September 2006, Watson filed a motion to withdraw as counsel due

to "irreconcilable differences" and Ware's notification to him that he desired to find a new attorney. The motion was granted.

In February 2007, LaCombe enrolled as Ware's counsel of record. LaCombe filed a supplemental and amending petition for damages setting forth Billie Ware's (Earl's wife) loss of consortium and loss of enjoyment of life claim. The defendants promptly filed a peremptory exception of prescription regarding the loss of consortium claim, which was granted dismissing Billie's claims.

In March 2007, Watson filed a motion to intervene for the recovery of attorney's fees and expenses. In April 2007, LaCombe's Interrogatories and Request for Production of Documents was filed into the record. The case was mediated in June 2008, and LaCombe secured a $380,000 settlement. He also negotiated, on behalf of Ware, a settlement for $40,000 of a medicare lien of $167,654.40.

Following a hearing on September 16, 2008, the trial court rendered judgment awarding Watson $30,000 in attorney fees. It is from this judgment that Watson now appeals. LaCombe answered the appeal and urges that we reduce Watson's award for failure to file a loss of consortium claim on behalf of Billie.

## ISSUE

Watson's sole assignment of error is that the trial court erred "in its analysis of this case under the Rules of Professional Conduct Rule 1.5(a) in awarding [him] $30,000 of a $152,000 fee."

## DISCUSSION

Considering the standard of review set forth in *Stobart v. State through Department Of Transportation & Development*, 617 So.2d 880 (La.1993), we must review the reasonableness of the trial court's apportionment of attorney's fees

2

between Watson and LaCombe. If the apportionment was reasonable we cannot say the trial court manifestly erred. Pursuant to *Saucier v. Hayes Dairy Products, Inc.*, 373 So.2d 102 (La.1979), the factors set forth in Rule 1.5 of the Rules of Professional Conduct are the basis for determining fee allocation. Rule 1.5 provides in pertinent part:

(a) A lawyer shall not make an agreement for, charge, or collect an unreasonable fee or an unreasonable amount for expenses. The factors to be considered in determining the reasonableness of a fee include the following:

(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;

(3) the fee customarily charged in the locality for similar legal services;

(4) the amount involved and the results obtained;

(5) the time limitations imposed by the client or by the circumstances;

(6) the nature and length of the professional relationship with the client;

(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and

(8) whether the fee is fixed or contingent.

In its written reasons for judgment, the trial court found:

On January 3, 2001, Mr. Watson filed a petition for damages on behalf of Mr. Ware. The matter continued for approximately six years after the review panel. On February 7, 2006, Mr. Watson presented a settlement to Mr. Ware in the amount of $35,000.00.

At the time of the settlement offer, there was an outstanding Medicare lien of $167.654.40. Mr. Ware refused the settlement because it was not enough to compensate him and pay the lien. Disappointed with the representation, Mr. Ware discharged his attorney. He thereafter retained the Townsley Law Firm, and attorney Marcus P. LaCombe to pursue the medical malpractice claim against the defendant on June 27,

3

2006.

Subsequently, Mr. Lacombe retained an expert witness to testify to the liability of the defendant. He contacted the Louisiana Patient Compensation Fund to mediate the claim with Elizabeth L. Middleton as mediator. The mediation took place in Alexandria on June 24, 2008. The claim was settled for $380,000.00.

. . . .

Mr. Watson handled Mr. Ware's case for a period of six years before an initial settlement of $35,000 was offered. Mr Watson testified that over a six year period he had written only ten (10) correspondences in the matter. He had not contacted the Louisiana Patient Compensation Fund to mediate the matter nor did he propound any discovery. In fact, evidence shows that over the six year period, only one deposition was noticed and conducted by Mr. Watson. Defense counsel, Attorney Gene Sues propounded the discovery in the matter and noticed all, but one of the depositions. Mr. Sues also obtained Mr. Ware's medical records and copied them to Mr. Watson.

The plaintiff, Mr. Ware, testified that he discharged Mr. Watson because Mr. Watson did not keep him abreast of the litigation. He had to always contact Mr. Watson for information. Consequently, Mr. Watson was discharged and the Townsley Firm was hired. In a short time period the Townsley Law Firm was able to obtain mediation and ultimately a settlement of $380,000.

Taking into consideration the work actually performed by Mr. Watson, the settlement offer of $35,000, the length of Mr. Watson's representation, the final settlement obtained by the Townsley Law Firm, this court has determined that Mr. Watson is entitled to no more than $30,000 in this matter.

It was undisputed that the case settled for $380,000 with a 40% contingency fee contract amounting to $152,000 in legal fees.

Watson testified that he has practiced law since 1984. He said that over fifty percent of his practice is medical malpractice work. He testified that he has tried close to a hundred and fifty jury trials, with four or five of those with verdicts exceeding one million dollars. Watson testified that he brought Ware's case before the medical review panel which returned an unfavorable result, a common result.

4

Watson thereafter filed suit.

Watson testified that he took the deposition of Dr. Trask, the Houston-based physician who performed corrective surgery on Ware. He also deposed Dr. Vaughn who performed the original surgery. Watson further testified that he planned to retain Dr. Steven Esses to establish the permanency of Ware's disability. Watson testified that it is not uncommon for medical malpractice actions to linger, but he admitted that the six or seven years that had elapsed was a long time. He stated that problems with Hurricanes Rita and Katrina further delayed the case, but that it was scheduled for trial in January 2006. Regarding the settlement offer of $35,000, Watson testified that he has a duty to present the offer to his client, but that he would have never recommended that Ware take that offer considering the Medicare lien, which was substantially more than the offer, and the permanency of Ware's disability. Watson said that Ware thereafter left and obtained the services of the Townsley Law Firm.

Watson testified that he did not file a claim for loss of consortium for Billie although he was aware of Ware's sexual dysfunction from the beginning. He testified that it was an "all or nothing" case and that the bottom line would not have been affected. He stated that he did not have a contract with Ware's wife and had not spoken with her or Mr. Ware about any claims she might have.

LaCombe testified he graduated from law school in 2003, had tried three jury trials in the past five years as lead counsel, and had one successful jury verdict. LaCombe admitted that every document that he presented to the mediator prior to the settlement were records or documents that had been obtained from Watson. He further admitted that he did not conduct any discovery or make any court

5

appearances. LaCombe said that as a trial approaches, cases tend to settle. He further testified that from May 2007 to February 2008, he was only able to get an increased offer to settle for $50,000 compared to the $35,000 offer Watson received.

LaCombe testified that the testimony obtained from Watson by Dr. Trask was not sufficient to go to trial because he could not unequivocally say what the cause of Ware's injuries were, although Dr. Trask did find that Vaughn breached the standard of care. LaCombe testified that he retained Dr. Esses, that Ware saw him in Houston, and that he met with Dr. Esses several times to discuss theories of the case. LaCombe opined that the mediator was aware of Dr. Esses' involvement in the case; a fact that he believed was influential in bringing about the settlement offer. However, he admitted that in both letters he sent to the mediator fourteen days prior to the mediation, he only referenced Dr. Trask.

Ware testified that he contacted Watson at the recommendation of another attorney. He stated that his main problem with Watson's representation was that he never contacted him or kept him abreast of the case's status. Ware said that he would mark on his calendar when he called him which he did every three months in order to check on the status. Ware testified that his family would question him as to the status, but that he knew it was complicated and would take time. Ware then reviewed several letters he sent to Watson in 2006, in which he discusses not only his problems, but how they affected his wife. He testified that he was "disgusted" with Watson because of the time involved and because he was not aggressive enough.

Having reviewed the record, we find no manifest error in the trial court's award of $30,000 in attorney fees to Watson. The testimony at trial revealed that Watson is an experienced medical malpractice attorney. It is clear from the record

6

that he obtained the overwhelming majority of the documentary evidence in this case. On the other hand, the less experienced LaCombe was able to secure a $380,000 settlement for Ware and negotiate a substantial reduction in the Medicare lien.

Whether the same result would have been reached had Watson not been discharged is speculative, but first offers are often far lower than the amount that ultimately brings consensus. We are certain that Watson, an attorney with more than twenty-five years experience, was well aware of this fact. Nevertheless, we cannot find the trial court's award manifestly erroneous considering the other circumstances, primarily, the long delay, the loss of consortium issue, and the client's overall dissatisfaction with Watson.

We find that the trial court was not unreasonable in awarding Watson $30,000. Additionally, we do not find that the award should be decreased for the failure to file a loss of consortium claim. Accordingly, we find no manifest error in the trial court's ruling and the judgment of the trial court is affirmed.

**AFFIRMED.**

7